2007 WY 20

**Robert E. BROMLEY, Appellant (Defendant),**

v.

**The STATE of Wyoming, Appellee (Plaintiff).**

**No. 05–229.**

Supreme Court of Wyoming.

Feb. 1, 2007.

Representing Appellant: Ken Koski, State Public Defender, PDP; Donna D. Domonkos, Appellate Counsel; Ryan R. Roden, Senior Assistant Appellate Counsel. Argument by Mr. Roden.

Representing Appellee: Patrick J. Crank, Attorney General; Paul Rehurek, Deputy Attorney General; D. Michael Pauling, Senior Assistant Attorney General; Dee Morgan, Senior Assistant Attorney General. Argument by Ms. Morgan.

Before VOIGT, C.J., and GOLDEN, HILL, KITE, and BURKE, JJ.

KITE, Justice.

[¶1] Robert E. Bromley was convicted by a jury of three felonies involving methamphetamine: delivery in violation of Wyo. Stat. Ann. § 35-7-1031(a)(i) (LexisNexis 2005); possession with intent to deliver also in violation of § 35-7-1031(a)(i); and possession in violation of § 35-7-1031(c)(ii). He appeals, claiming: 1) the district court erred in admitting uncharged misconduct evidence; 2) the district court gave the jury an erroneous limiting instruction concerning the uncharged misconduct evidence; 3) the State presented insufficient evidence to support conviction of possession with intent to deliver and possession; and, 4) the district court imposed an illegal sentence because the sentences for the latter two convictions should have merged. We find no error and affirm.

## ISSUES

[¶2] Mr. Bromley presents the following issues for this Court's consideration:

*ISSUE I*

Did the trial court err in admitting uncharged misconduct evidence?

*ISSUE II*

Did the trial court give an erroneous limiting instruction to the jury regarding the uncharged misconduct evidence?

*ISSUE III*

Does sufficient evidence exist in the record to support appellant's convictions for counts 2 and 3?

*ISSUE IV*

Is appellant's sentence illegal because counts 2 and 3 should have merged for sentencing purposes?

The State re-phrases the issues presented as follows:

I. Did the district court abuse its discretion when it admitted the testimony of Ms. Huntley, Mr. DuFresne and Ms. Vigil?

II. Did the district court commit plain error or abuse its discretion when it gave the limiting instruction proffered by appellant?

III. Were appellant's convictions on counts II and III supported by sufficient evidence?

IV. Did the district court commit plain error when it failed to merge appellant's possession and possession with intent to deliver convictions for sentencing purposes?

## FACTS

[¶3] In the early morning hours of June 10, 2004, a deputy from the Albany County Sheriff's Office responded to a call for help on Osprey Lane in Laramie, Wyoming. As the deputy approached the area, he observed someone waving a light along the road. He rolled down his window and heard a woman's voice screaming for help. He approached the woman and she identified herself as Sadie Huntley. She appeared to be under the influence of a controlled substance. The officer called for an ambulance to transport Ms. Huntley to Ivinson Memorial Hospital where she was treated for a possible overdose. At the hospital, blood tests were performed which showed methamphetamine in Ms. Huntley's system. Ms. Huntley told police she had purchased methamphetamine from Mr. Bromley the night before and smoked

what she purchased at his residence that night and the following morning.

[¶ 4] The State filed a felony information alleging one count of delivery of a controlled substance against Mr. Bromley. The information alleged the facts concerning Ms. Huntley and also stated the Wyoming Division of Criminal Investigation (DCI) had received reports from three other individuals that Mr. Bromley had been selling methamphetamine from his home on Osprey Lane. The State obtained an arrest warrant and arrested Mr. Bromley. After the arrest, the State obtained a warrant to search Mr. Bromley's residence. DCI agents found packaged bags of methamphetamine, U.S. currency, scales and other drug paraphernalia inside Mr. Bromley's residence. They also found bags containing methamphetamine and paraphernalia secreted in several locations in the yard outside his residence. On the basis of the evidence found in the search, the State filed an amended information alleging the additional counts of possession and possession with intent to deliver.

[¶ 5] Prior to trial, defense counsel filed a motion to exclude evidence of prior bad acts. The defense sought an order prohibiting the admission of: 1) Ms. Huntley's testimony concerning her history of purchasing methamphetamine from and using the drug with Mr. Bromley; 2) Vince DuFresne's testimony concerning admissions Mr. Bromley made to him in jail after his arrest; 3) a baggie containing marijuana and Mr. Bromley's fingerprint; and 4) evidence of Mr. Bromley's prior convictions involving controlled substances. After a hearing, the district court denied the motion except with respect to Mr. Bromley's prior convictions. The district court concluded Ms. Huntley's and Mr. Du-Fresne's testimony and the baggie and fingerprint were admissible under W.R.E. 404(b) to show identity, lack of mistake, knowledge, and a pattern of conduct. The district court also concluded the probative value of the evidence outweighed the potential for unfair prejudice. Addressing Mr. Bromley's prior convictions, however, the district court concluded the risk was too great that the jury might convict Mr. Bromley on the current charges based on evidence that

he was convicted of similar offenses in the past and ruled the evidence was not admissible.

[¶ 6] Several days after the 404(b) hearing, the State notified the defense it would be calling Belle Moree Vigil to testify that she helped Mr. Bromley put drug paraphernalia into bags and take them outside into the backyard the night before his arrest; Mr. Bromley kept methamphetamine in a black fanny pack he wore around his neck; and after Mr. Bromley's arrest, she and others found methamphetamine not discovered by law enforcement at his residence. Defense counsel did not move for exclusion of Ms. Vigil's testimony prior to trial, but objected to its admission during trial. The district court overruled the objection based upon the mistaken belief it had considered the testimony and ruled it admissible at the 404(b) hearing.

[¶ 7] On March 25, 2005, after three days of trial, the jury returned a guilty verdict against Mr. Bromley on all three counts. Defense counsel stipulated to Mr. Bromley's prior controlled substance convictions for purposes of Wyo. Stat. Ann. § 35-7-1038 (LexisNexis 2005), which allows imprisonment of a person convicted of a second or subsequent controlled substances offense for a term up to twice the term otherwise authorized. The district court sentenced Mr. Bromley to consecutive prison terms of thirty-five to forty years on the delivery and possession with intent to deliver convictions and another consecutive term of six to seven years for possession of methamphetamine.

## DISCUSSION

### 1. Admission of Uncharged Misconduct Evidence

▉▉▉ [¶ 8] Mr. Bromley contends the district court erred in admitting evidence of uncharged misconduct. We review claims of error concerning the improper admission of W.R.E. 404(b) evidence for abuse of discretion and will not reverse the trial court's decision absent a clear abuse. *Thomas v. State*, 2006 WY 34, ¶ 10, 131 P.3d 348, 352 (Wyo.2006). A trial court abuses its discretion when it could not have reasonably con-

cluded as it did. *Id.* In this context, "reasonably" means sound judgment exercised with regard to what is right under the circumstances and without being arbitrary or capricious. *Id.*

[¶ 9] W.R.E. 404(b)0007 provides: Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.

Pursuant to this rule, evidence of uncharged misconduct is admissible to prove things other than character. *Gleason v. State,* 2002 WY 161, ¶ 17, 57 P.3d 332, 339–40 (Wyo. 2002). Evidence of specific instances of uncharged misconduct is admissible to prove consequential facts, such as intent, knowledge or identity. *Id.* The list contained in Rule 404(b) of purposes for which evidence of other crimes may be admissible is not exclusive. *Blakeman v. State,* 2004 WY 139, ¶ 32, 100 P.3d 1229, 1237 (Wyo.2004). We have recognized, for example, that course of conduct evidence involving uncharged misconduct is admissible if it forms part of the history of the event or serves to enhance the natural development of the facts. *Id.* Uncharged misconduct evidence is not admissible, however, if its only purpose is to show a defendant has a disposition to commit crimes. *Id.*

[¶ 10] Mr. Bromley's claim that Rule 404(b) was violated is two-pronged. First, he claims the rule was violated by the admission of the evidence considered at the 404(b) hearing. Second, he claims the rule was violated by the admission of Ms. Vigil's testimony which was not identified by the State until after the 404(b) hearing. We address these contentions separately.

### a. Evidence Considered Prior to Trial

[¶ 11] Prior to trial, in its traverse to Mr. Bromley's motion to exclude Rule 404(b) evidence, the State informed the district court and the defense that it intended to call Ms. Huntley to testify that she purchased a gram of methamphetamine from Mr. Bromley in January 2004 to smoke at his house; she purchased methamphetamine from him on approximately fifteen other occasions between January and June 9, 2004; on approximately eight occasions, she accompanied Mr. Bromley to Colorado to meet with his source for methamphetamine; and on the day of the charged delivery Mr. Bromley threatened to kill her father and children if she was a "snitch." The State argued this testimony was admissible under Rule 404(b) because it tended to show Mr. Bromley's intent in possessing the methamphetamine found in his home was to deliver it to others; his knowledge of the controlled substance; and the absence of mistake.

[¶ 12] The State also advised that it intended to call Mr. DuFresne to testify that, while he was sharing a cell with Mr. Bromley after his arrest, Mr. Bromley admitted he was a methamphetamine dealer, said he was careful and had gotten away with it for a long time, and bragged that he made $12,000 per month selling methamphetamine. The State argued Mr. DuFresne's testimony was admissible under Rule 404(b) for the same purposes as Ms. Huntley's testimony.

[¶ 13] The State also gave notice of its intent to introduce baggies containing misdemeanor amounts of marijuana that were found at Mr. Bromley's residence inside packages containing methamphetamine. Mr. Bromley's fingerprint was found on one of the baggies containing marijuana. The State argued the evidence was admissible because it identified Mr. Bromley as being directly involved with the controlled substances found at his residence.

[¶ 14] At the motion hearing, after hearing arguments of counsel, the district court denied Mr. Bromley's motion to exclude the baggie and Ms. Huntley's and Mr. DuFresne's testimony. In its oral ruling, the district court stated:

Using the factors set forth by the Supreme Court in *Gleason,* including those set forth in the numbered paragraphs on page 10, the Court's going to allow the State's evidence regarding the testimony of Sadie Huntley.

... for purposes of 404(b), I will [also] admit the testimony of Mr. DuFresne.

\* \* \* \*

The Court will allow the admission of the defendant's fingerprint on the baggie of marijuana. Certainly, this evidence is prejudicial against Mr. Bromley[;] as \* \* \* in any criminal case, most of the evidence the State intends to use is prejudicial against the criminal defendant. That does not mean it is improper evidence.

The Court is convinced that the identity and lack of mistake purpose set forth by the State does, in fact, justify introduction of this evidence in the case of Ms. Huntley, as does a full explanation for the jury's benefit of [the] relationship of the parties.

\* \* \* \*

Certainly, as to all these issues, the pattern of conduct and lack of mistake issues are intertwined. These things don't occur in a vacuum, and we can't expect the jury to make its decision in a vacuum, either without knowing most of the facts that appropriately go to the jury.

In its written order on the motion, the district court stated:

As the Court orally ruled on March 15, 2005, after applying the test set forth in *Gleason v. State*, 2002 WY 161, 57 P.3d 332, this Court will permit the State to present the testimony of Ms. Huntley and Mr. DuFresne as well as the evidence of the marijuana baggies containing Defendant's fingerprints, as that information goes to show "identity" with respect to the charged crimes. Additionally, that evidence demonstrates a "lack of mistake" that justifies its introduction into evidence pursuant to *Gleason* and W.R.E. 404(b). And, while the testimony, no doubt, is prejudicial to defendant, the Court does not find its prejudicial nature outweighs its probative value.

[¶ 15] At trial, Ms. Huntley testified that she had known Mr. Bromley for eight years and obtained methamphetamine from him beginning in 2003; after 2003, she purchased methamphetamine from him at his house regularly until his arrest in June 2004; sometimes she drove Mr. Bromley to purchase methamphetamine from his source; and she used methamphetamine with Mr. Bromley frequently at his home on Osprey Lane. The State also called Mr. DuFresne who testified Mr. Bromley admitted he was a drug dealer, bragged that he had been dealing forever, and said DCI failed to discover money and methamphetamine at his residence after his arrest. The State also introduced as an exhibit a baggie containing marijuana found inside a package containing methamphetamine during the search of Mr. Bromley's yard. A fingerprint inside the baggie was identified as Mr. Bromley's.

[¶ 16] On appeal, the thrust of Mr. Bromley's claim of error is that the district court failed to follow the mandatory procedures for determining admissibility of uncharged misconduct evidence set forth in *Gleason*, ¶ 18, 57 P.3d at 340. Under *Gleason:* 1) the evidence must be offered for a proper purpose; 2) the evidence must be relevant; 3) the probative value of the evidence must not be substantially outweighed by its potential for unfair prejudice; and 4) upon request, the trial court must instruct the jury that the similar acts evidence is to be considered only for the purpose for which it was admitted. *Id.*

[¶ 17] Mr. Bromley also argues the district court did not comply with *Gleason* because there is no indication it considered the questions this Court said trial courts must consider in determining the probative value of evidence offered under Rule 404(b):

1. How clear is it that the defendant committed the prior bad act?

2. Does the defendant dispute the issue on which the state is offering the prior bad acts evidence?

3. Is other evidence available?

4. Is the evidence unnecessarily cumulative?

5. How much time has elapsed between the charged crime and the prior bad act?

*Gleason*, ¶ 27, 57 P.3d at 342. Mr. Bromley further asserts the district court did not com-

ply with *Gleason* because it did not consider the following factors:

1. The reprehensible nature of the prior bad act.
2. The sympathetic character of the alleged victim of the prior bad act.
3. The similarity between the charged crime and the prior bad act.
4. The comparative enormity of the charged crime and the prior bad act.
5. The comparable relevance of the prior bad act to the proper and forbidden inferences.
6. Whether the prior act resulted in a conviction.

*Id.* In *Gleason,* we said:

In future cases involving the admissibility of evidence under W.R.E. 404(b), the record shall reflect the trial court's identification of the purpose or purposes for admission of the evidence, the findings and conclusions establishing relevance and probative value, and the factors considered in balancing probative value against the potential for unfair prejudice. The "shotgun approach" of listing every conceivable purpose for admissibility, followed by a bald statement that probative value outweighs prejudicial effect will no longer be sufficient. While the trial court need not make an express finding on every factor . . ., the record must contain sufficient findings to support the trial court's conclusions.

*Gleason,* ¶ 30, 57 P.3d at 343.

[¶ 18] The district court's findings concerning the Rule 404(b) evidence in the present case do not reflect consideration of all of the factors identified in *Gleason.* The findings, for example, do not clearly identify the factors the district court considered in balancing the probative value of the evidence against the potential for unfair prejudice. The findings also do not reflect whether the district court considered the similarity between the charged crime and the prior misconduct. The findings also do not reflect whether the district court considered "the extent to which the evidence distracts the jury from the central question whether the defendant committed the charged crime." *Gleason,* ¶ 27, 57 P.3d at 342. The findings

are not of the sort this Court described in *Gleason* as aiding appellate review.

[¶ 19] Additionally, the purposes the district court identified for admitting the evidence, i.e., proof of identity and absence of mistake, are less precise than *Gleason* instructed. The uncharged misconduct evidence at issue seems more suggestive of a "plan" to possess methamphetamine with an intent to deliver or "knowledge" concerning the use and delivery of methamphetamine. The evidence does not suggest an "absence of mistake or accident," particularly since Mr. Bromley claimed he did not possess the methamphetamine, by mistake or otherwise. The evidence also was not of the sort typically admitted to show "identity" because the prior acts were not peculiar or unique enough to show a personal "signature." *Suliber v. State,* 866 P.2d 85, 88 (Wyo.1993). However, the district court's failure to define its ruling as precisely as *Gleason* instructed does not rise to the level of an abuse of discretion. It is clear from the record that the evidence was not admitted to prove Mr. Bromley's character in order to show action in conformity therewith. Therefore, admission of the evidence did not violate Rule 404(b).

[¶ 20] In addition to being properly admitted to show a plan or knowledge, the evidence was, as the district court stated, admissible and relevant to show a course of conduct. Although the district court did not use the words "relevant" or "relevancy", it emphasized the jury's need to have a full explanation of the relationship between Mr. Bromley and Ms. Huntley in order to decide the case. Referencing all of the disputed evidence, the district court stated, "These things don't occur in a vacuum and we can't expect the jury to make its decision in a vacuum."

[¶ 21] We have said, "[C]ourse of conduct evidence . . . is admissible to give a jury a complete story when it is relevant and necessary to tell the complete story for the jury's understanding." *Howard v. State,* 2002 WY 40, ¶ 13, 42 P.3d 483, 487 (Wyo.2002) (citation omitted). Events do not occur in a vacuum and the jury has the right to have the offense placed in its proper setting. *Miller v. State,*

755 P.2d 855, 861 (Wyo.1988). The district court properly admitted the evidence to show Mr. Bromley's course of conduct.

■ [¶ 22] Mr. Bromley also asserts the district court should have excluded the evidence because its prejudicial effect far outweighed its probative value. He claims "the State's case was based upon inferences stacked upon inferences from circumstantial evidence"; therefore, a reasonable probability existed that without the uncharged misconduct evidence, the verdict may have been more favorable. We have concluded the uncharged misconduct evidence was properly admitted under Rule 404(b) to prove a plan, knowledge or course of conduct. The main factor the district court considered in concluding the evidence was more probative than prejudicial was the jury's need to know the context in which the charges arose. Considering this factor, we hold the district court reasonably concluded the probative value of the evidence outweighed its potential for prejudicing the jury.

### b. Testimony Not Considered Prior to Trial

[¶ 23] Prior to trial, but after the district court's ruling on the motion to exclude Rule 404(b) evidence, the State filed an amended witness list identifying Belle Moree Vigil as a potential witness. The State indicated that, if called, Ms. Vigil was expected to testify:

[T]hat in the days prior to the Defendant's arrest she assisted the Defendant in packing paraphernalia into trash bags and a duffel bag and that the Defendant took the bags into the back yard. Vigil could testify that the Defendant kept methamphetamine in a black fanny pack that he kept around his neck. Vigil could testify that after the Defendant's arrest, that she went to Bromley's house with others and removed methamphetamine that the police had not found.

The defense did not move to exclude the witness or her testimony prior to trial and the district court did not conduct a *Gleason* hearing concerning this evidence.

[¶ 24] During Ms. Vigil's trial testimony, the following exchange occurred:

Q. So with Mr. Bromley, you had been using regularly for about a year?

A. Uh-huh, a good year.

Q. Had you gotten methamphetamine from Mr. Bromley during that time?

[Defense counsel]: Your Honor, at this point, may I approach the bench with [the prosecutor]?

The Court: You may.

(Whereupon, the following proceedings were had at the bench, outside the hearing of the Jury.)

[Defense counsel]: Your Honor, I know that you've already ruled on it, but I wish to renew my objection to the entry of other acts for which he's not charged on the grounds that it's being used for purposes other than those that are permitted in 404(b). It is inflammatory and prejudicial.

The Court: And this is the same issue that was ruled upon in my written pretrial rulings?

[Defense counsel]: That's right.

The Court: Your objection is noted and the ruling stands.

As this excerpt reflects, defense counsel suggested that Ms. Vigil's testimony was considered at the 404(b) hearing when in fact it was not. The State stood silent and did not advise the court that Ms. Vigil's testimony was not considered at the hearing.

[¶ 25] After this exchange, Ms. Vigil testified she obtained methamphetamine from Mr. Bromley during the year they were using it together, describing Mr. Bromley as "very generous." She loaned her car to him and in return she "could have $100 worth of drugs, speed, whatever." Ms. Vigil also testified that the night before Mr. Bromley's arrest, she helped him put paraphernalia in bags and carry them outside the house. After Mr. Bromley's arrest she and another woman went back to his house and found methamphetamine not discovered by law enforcement. Mr. Bromley contends the admission of Ms. Vigil's testimony without the mandatory *Gleason* hearing requires reversal.

■ [¶ 26] The State claims the doctrine of invited error applies to preclude Mr.

Bromley from complaining on appeal about any error in the admission of Ms. Vigil's testimony because the defense induced the error by telling the district court it had already decided the issue at the pretrial motion hearing. We disagree. In *James v. State*, 998 P.2d 389, 392 (Wyo.2000), we made clear that for the doctrine of invited error to apply the defense must have solicited or consented to the admission of inadmissible evidence. In *James*, defense counsel objected to a witness reading from a journal that had not been admitted into evidence. The State offered the journal into evidence and the trial court twice asked the defense if there were any objections to its admission. Defense counsel answered no both times and the journal was admitted. We said:

> The doctrine of "invited error" has long been recognized in Wyoming and "embodies the principle that a party will not be heard to complain on appeal of errors which he himself induced or provoked the court or the opposite party to commit." *Schott v. State*, 864 P.2d 38, 39 (Wyo.1993) (quoting 5 Am.Jur.2d Appeal and Error § 713, at 159 (1962)). Generally, defense counsel must have solicited or otherwise acted affirmatively for the invited error doctrine to apply. *Id.* In this case, James' defense counsel failed to object to the error at trial, but did not solicit or consent to admitting the hearsay evidence, and we will not apply the invited error doctrine to these facts.

*Id.* at 393. In Mr. Bromley's case, defense counsel not only did not solicit or consent to Ms. Vigil's testimony, she objected to it. Under these circumstances, the invited error doctrine does not apply.

[¶ 27] The State contends next that Ms. Vigil's testimony was not uncharged misconduct evidence; therefore, no *Gleason* hearing was required. The State points to Ms. Vigil's testimony that she helped Mr. Bromley load paraphernalia into bags and move it out of the house the night before his arrest. We agree with the State that this part of Ms. Vigil's testimony was not uncharged misconduct evidence. Rather, her testimony in this regard presented an account of Mr. Bromley's activities related to

the crimes charged. It was relevant to refute his claim that the paraphernalia found outside his house was not his and to prove his knowledge that he illegally possessed controlled substances. Additionally, some of the charges against Mr. Bromley arose from the discovery of the items Ms. Vigil helped hide. Because this testimony did not concern uncharged misconduct, Rule 404(b) does not apply to this part of her testimony. However, Ms. Vigil also testified concerning her history of using methamphetamine with Mr. Bromley and obtaining it from him. She further testified concerning methamphetamine she and others retrieved from his residence after the search by law enforcement. This testimony clearly constituted uncharged misconduct evidence.

[¶ 28] With respect to this part of Ms. Vigil's testimony, we consider Mr. Bromley's claim that reversal is required because no *Gleason* hearing was held to determine its admissibility. In *Gleason*, the Court addressed a similar claim that testimony was improperly admitted because it was not listed in the State's notice of uncharged misconduct and was not the subject of an appropriate *Gleason* hearing. *Gleason*, ¶ 24, 57 P.3d at 341. We considered the claim under the plain error standard because the defense did not object to the testimony. We concluded there was no plain error because the State listed the testimony in its pretrial memorandum so it was not a surprise and the testimony was brief and did not reveal any new information. *Id.* We did not hold the failure to conduct a *Gleason* hearing on the testimony required reversal.

[¶ 29] For similar reasons we conclude the district court's failure to conduct a *Gleason* hearing on Ms. Vigil's testimony does not require reversal. Ms. Vigil's testimony concerning uncharged misconduct was of the same nature as other testimony the district court considered at the *Gleason* hearing. Like Ms. Vigil, Ms. Huntley testified about her history of using methamphetamine with Mr. Bromley and obtaining it from him. Like Ms. Vigil, Mr. DuFresne testified that DCI failed to discover methamphetamine in its search of Mr. Bromley's property. Ms. Vigil's testimony was not a surprise to the

defense because the State identified the witness and the substance of her testimony in its amended witness list. The uncharged misconduct portions of Ms. Vigil's testimony were brief. The only part of her testimony that was new to the jury, in the sense that no other witness gave similar testimony, was her testimony that she helped Mr. Bromley package and remove paraphernalia from his home the night before his arrest. As we stated above, this testimony was not uncharged misconduct evidence and did not require a *Gleason* hearing. Given the brevity and cumulative nature of the remainder of her testimony, we hold the district court's failure to conduct a *Gleason* hearing to determine its admissibility does not require reversal.

### 2. Limiting Instruction

[¶30] Mr. Bromley claims the district court erred in instructing the jury it could consider the uncharged misconduct evidence to prove motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident. Mr. Bromley claims the district court should have instructed the jury it could consider the evidence only for the purposes specified in its Rule 404(b) order.

[¶31] When reviewing questions involving jury instructions, we afford the trial court significant deference. *Farmer v. State*, 2005 WY 162, ¶20, 124 P.3d 699, 706 (Wyo.2005).

A trial court is given wide latitude in instructing the jury and, as long as the instructions correctly state the law and the entire charge covers the relevant issue, reversible error will not be found. Instructions must be considered as a whole, and individual instructions, or parts of them, should not be singled out and considered in isolation. Prejudice will be determined to exist only where an appellant demonstrates that the instruction given confused or misled the jury with respect to the proper principles of law.

*Luedtke v. State*, 2005 WY 98, ¶28, 117 P.3d 1227, 1232 (Wyo.2005) (citations omitted).

[¶32] The instruction about which Mr. Bromley complains read as follows:

During the course of the trial, you have heard evidence that, at a time other than the times alleged in the State's Information, the Defendant committed acts similar to the acts charged here. You may not consider such evidence as proof of the Defendant's character in order to show he acted in conformity with such character.

If, however, you find, first that the State of Wyoming has proved beyond a reasonable doubt that the Defendant has committed the other acts, you may consider those similar acts in determining whether they are relevant to those for which the Defendant is accused by proving motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident in determining whether or not the State has proved the allegations of its Information beyond a reasonable doubt.

[¶33] On appeal, Mr. Bromley contends this instruction was not a limiting instruction at all because it failed to instruct the jury that it could consider the evidence only for the purposes for which the district court admitted it under Rule 404(b). Mr. Bromley contends he was substantially prejudiced by this error and a reasonable probability exists that in the absence of the erroneous instruction the verdict might have been more favorable. The State argues the doctrine of invited error applies to preclude Mr. Bromley from claiming error in the instruction because the instruction was proposed and not objected to by the defense.

[¶34] Our rules governing the admission of uncharged misconduct evidence include the requirement that upon request the trial court must instruct the jury the evidence is to be considered only for the proper purpose for which it was admitted. *Gleason*, ¶18, 57 P.3d at 340. In Mr. Bromley's case, upon ruling the evidence admissible, the district court informed the defense it was entitled to a specific instruction concerning the purpose of the evidence. Defense counsel responded that she had prepared a general instruction addressing Rule 404(b) evidence but would submit a revised one reflecting the court's ruling. Apparently, defense counsel failed to do so. During the instruction conference, the court read the

instruction about which Mr. Bromley now complains and asked whether either counsel objected. Defense counsel replied, "I do not." Mr. Bromley asked about the instruction and defense counsel responded:

This is an instruction, that says if they heard testimony that you did other things, they have to establish beyond a reasonable doubt that you did it, and they can't—they can't use the fact that that you might have done something else in the past to say that you did this, just because you're a bad character. And if they do decide to take it into consideration for some other purpose, they have to be satisfied beyond a reasonable doubt that it occurred.

Defense counsel went on to explain that the instruction was a combination of two instructions she had submitted because:

I want the Jury to proceed with caution. For example, Sadie Huntley testified that you had given her methamphetamine in the past. * * * And so this is to make sure the Jury takes that in the right way and gives it the right weight. * * * Doesn't give it weight when it's not supposed to give it weight.

 [¶ 35] As the record clearly reflects, defense counsel not only failed to object to the instruction which now forms the basis for Mr. Bromley's claim of error on appeal, she proposed it, failed to revise it and then argued in favor of it. The doctrine of invited error prohibits a party from raising error on appeal that was induced by the party's own actions. *Butcher v. State,* 2005 WY 146, ¶ 29, 123 P.3d 543, 552 (Wyo.2005). As applied to jury instructions, the invited error doctrine provides that use of an instruction proposed by the appellant may not be grounds for reversal unless the instruction was necessarily prejudicial. *Id.* We hold the doctrine applies, precluding reversal based upon the improper instruction absent a showing by Mr. Bromley that the instruction was necessarily prejudicial. We are at a loss to see how the instruction prejudiced Mr.

Bromley, and he provides no assistance, stating in his brief only that the prejudice to him was "so substantial, there is a reasonable probability that in the absence of this error the verdict might have been more favorable to him." We hold Mr. Bromley has failed to meet his burden of showing the instruction was necessarily prejudicial.[1]

### 3. Sufficiency of the Evidence

 [¶ 36] Mr. Bromley claims the evidence presented at trial was insufficient to support his convictions for possession with intent to deliver and possession. He contends the State failed to prove beyond a reasonable doubt necessary elements of those offenses. Specifically, he claims the State failed to prove beyond a reasonable doubt that he possessed a felony amount of methamphetamine and, if he did possess it, that he intended to deliver it.

 [¶ 37] When reviewing the sufficiency of the evidence, this Court accepts as true the State's evidence and affords it those inferences which may be reasonably and fairly drawn from it. *Jones v. State,* 2006 WY 40, ¶ 9, 132 P.3d 162, 165 (Wyo.2006). We do not consider conflicting evidence or inferences that can be drawn from such evidence. *Id.* Our duty is to determine whether a quorum of reasonable and rational individuals would, or even could, have come to the same result as the jury actually did. *Id.*

[¶ 38] Applying these standards, we review the evidence presented by the State, and inferences that may be drawn from it, to determine whether a reasonable jury could have concluded the State proved the charges against Mr. Bromley beyond a reasonable doubt. The State presented Ms. Huntley's testimony that on June 9, 2004, she went to Mr. Bromley's house "to get high." Mr. Bromley loaded a pipe with methamphetamine, handed it to her and she smoked it. Ms. Huntley began to feel sick, left the house

---

1. In his reply brief, Mr. Bromley raises a new issue. In the event this Court concludes invited error occurred, he claims defense counsel rendered ineffective assistance of counsel. To demonstrate ineffectiveness, an appellant must show both that counsel's performance was deficient and that prejudice resulted. *Hirsch v. State,* 2006 WY 66, ¶ 15, 135 P.3d 586, 593–94 (Wyo. 2006). Because we conclude Mr. Bromley has not shown prejudice resulted from the limiting instruction, his ineffective assistance of counsel claim fails.

and ran to the neighbor's where she called for help.

[¶ 39] During her testimony, Ms. Huntley identified one of the State's exhibits as a glass pipe that she and Mr. Bromley purchased a few weeks before his arrest. She testified Mr. Bromley wore a black fanny pack containing methamphetamine around his neck. She also testified Mr. Bromley kept track of individuals who purchased methamphetamine from him, how much they purchased and how much they owed on a sheet of glass found in his bedroom and introduced as an exhibit. She identified the black fanny pack Mr. Bromley wore around his neck and described how he kept the money he was paid for methamphetamine in $500 bundles.

[¶ 40] Ms. Vigil testified that the night before Mr. Bromley's arrest, she helped him put drug paraphernalia in bags, including a trash bag and a duffle bag. She testified she and Mr. Bromley smoked methamphetamine, which he provided, that night.

[¶ 41] The State presented evidence that, in executing the search warrant inside Mr. Bromley's residence, agents found a black fanny pack containing several bags of U.S. currency, metal tins containing bags of methamphetamine and marijuana, a propane lighter and a glass pipe of the sort commonly used to smoke methamphetamine. Agents found approximately 2.36 grams of methamphetamine in the bags inside the fanny pack.

[¶ 42] Agents also found a large brown garbage bag and a blue duffle bag underneath a stock tank outside Mr. Bromley's residence. Ms. Vigil identified the garbage bag and the duffle bag as the ones she had packed the night before Mr. Bromley's arrest. Inside the garbage bag, agents found a security box containing various sized plastic packaging bags of the type commonly used for packaging methamphetamine. They also found an electronic scale, a mirror, a sifter commonly used to sift controlled substances, a cookie can containing several pill bottles and small plastic containers with methamphetamine residue, a screen, butane torches and lighters, smoking papers, a broken pipe, funnels, and glass beakers. Inside the duffle bag, agents found an oxygen tank, pieces of sheet metal, two black fanny packs, tongs and a tape entitled "Secrets of Making Glass Pipes."

[¶ 43] Agents also searched a storage shed outside the residence and found a brown trash sack containing boxes and more bags. Inside the boxes and bags, agents found pill bottles containing methamphetamine and methamphetamine residue, a vial, a small bag containing marijuana, a scale, a calculator, glass pipes used for smoking methamphetamine, torches, lighters, and other controlled substances paraphernalia. One of the pill bottles contained nine grams of methamphetamine.

[¶ 44] Inside the residence in Mr. Bromley's bedroom, agents found scales and other paraphernalia and a surveillance tape showing Mr. Bromley wearing a black fanny pack around his neck. Agents also found a scale in the dining room and a glass pipe in the living room. The State introduced evidence showing that Mr. Bromley's fingerprints were found on a number of the items seized from his residence.

[¶ 45] Accepting this evidence as true and giving it all reasonable inferences, we hold a quorum of reasonable and rational individuals could have concluded Mr. Bromley was guilty of possession and possession with intent to deliver a controlled substance. The State presented evidence from which the jury could have reasonably concluded Mr. Bromley had methamphetamine in his possession and shared it with others on the night before his arrest. The State presented evidence from which the jury could have reasonably concluded he had the accoutrements commonly associated with the sale of methamphetamine. Although no evidence directly showed Mr. Bromley possessed the nine grams of methamphetamine found outside his residence, the State presented ample circumstantial evidence from which the jury could reasonably conclude it was Mr. Bromley's. The evidence was sufficient to support the jury's verdict of guilty of possession and possession with intent to deliver.

### 4. Merger of Sentences

[¶ 46] Mr. Bromley claims his convictions for felony possession of methamphet-

amine and possession with intent to deliver were based upon the same evidence and should have merged for sentencing purposes. He claims the sentence to consecutive terms of imprisonment on the two convictions was illegal. Addressing claims of illegal sentences, we have said:

> An illegal sentence is one that exceeds statutory limits, imposes multiple terms of imprisonment for the same offense, or otherwise violates constitutions or the law. The determination of whether a sentence is illegal is made by reference to the authorizing statute or applicable constitutional provisions and is, therefore, a matter of statutory interpretation. Interpretation of statutes is a question of law, which we review de novo.

*Brown v. State,* 2004 WY 119, ¶ 7, 99 P.3d 489, 491 (Wyo.2004).

[¶ 47] Addressing the concept of merger of sentences, we have said:

> As a practical matter, in appeals alleging imposition of multiple sentences for a single act, the focus is on those facts proven at trial. The ultimate question is whether those facts reveal a single criminal act or multiple distinct offenses against the victim. Where the acts required for the commission of one offense are a necessary and indispensable precursor to commission of a second offense, the offenses merge for purposes of sentencing. Such merger is mandatory where the second offense cannot be committed absent commission of the first offense. If the statutory elements test reveals disparate component parts to the two charged offenses, it may be presumed that the legislature intended separate or cumulative punishments upon convictions of both.

*Sincock v. State,* 2003 WY 115, ¶ 11, 76 P.3d 323, 329–30 (Wyo.2003) (citations omitted). With these principles in mind, we turn to the specifics of the charges on which Mr. Bromley was convicted and sentenced.

[¶ 48] Mr. Bromley was charged with possession of a felony amount of a controlled substance in violation of § 35–7–1031(c)(ii), which provides as follows:

> (c) It is unlawful for any person knowingly or intentionally to possess a controlled substance unless the substance was obtained directly from, or pursuant to a valid prescription or order of a practitioner while acting in the course of his professional practice, or except as otherwise authorized by this act. Any person who violates this subsection:
>
> (i) And has in his possession a controlled substance in the amount set forth in this paragraph is guilty of a misdemeanor * * *. For purposes of this paragraph, the amounts of a controlled substance are as follows:
>
> * * *
>
> (C) For a controlled substance in powder or crystalline form, no more than three (3) grams;
>
> (ii) And has in his possession methamphetamine or a controlled substance classified in Schedule I or II which is a narcotic drug in an amount greater than those set forth in paragraph (c)(i) of this section, is guilty of a felony punishable by imprisonment for not more than seven (7) years, a fine of not more than ten thousand dollars ($10,000.00), or both;

Pursuant to this provision, the jury was instructed that it could find Mr. Bromley guilty of felony possession if it found that he knowingly and intentionally possessed more than three grams of methamphetamine.

[¶ 49] Mr. Bromley was also charged with possession of a controlled substance with intent to deliver in violation of § 35–7–1031(a)(i), which provides:

> (a) Except as authorized by this act, it is unlawful for any person to manufacture, deliver, or possess with intent to manufacture or deliver, a controlled substance. Any person who violates this subsection with respect to:
>
> (i) Methamphetamine or a controlled substance classified in Schedule I or II which is a narcotic drug, is guilty of a crime and upon conviction may be imprisoned for not more than twenty (20) years, or fined not more than twenty-five thousand ($25,000.00), or both.

Pursuant to this provision, the jury was instructed it could find Mr. Bromley guilty of

possession with intent to deliver if the evidence showed beyond a reasonable doubt that he possessed methamphetamine with the intent to deliver it to another person.

[¶ 50] The jury found Mr. Bromley guilty of possession and possession with intent to deliver. The district court sentenced him to a term of years on the possession conviction and to a separate term of years to be served consecutively on the possession with intent to deliver charge. It is these two sentences that Mr. Bromley argues are illegal because possession was a necessary and indispensable precursor to possession with intent to deliver and the offenses merged for purposes of sentencing.

[¶ 51] The State argues the sentences did not merge because different facts supported the possession conviction than supported the possession with intent to deliver conviction. The State claims the felony possession conviction was supported by the evidence of nine grams of methamphetamine and paraphernalia used to consume it found outside Mr. Bromley's house. The State claims the possession with intent to deliver conviction was supported by the evidence of 2.94 grams of methamphetamine and paraphernalia used to sell it found inside his house.

[¶ 52] It has long been the rule in Wyoming that if a person is charged with *delivery* of a controlled substance and *possession with intent to deliver* precisely the same substance, the possession with intent to deliver charge merges with the delivery charge for sentencing purposes. *Boyd v. State*, 528 P.2d 287, 289 (Wyo.1974). This is so because possession with intent to deliver a controlled substance is a necessary and indispensable precursor to delivery when the latter charge involves precisely the same controlled substance as the former charge. Thus, where the defendant was convicted of one count of possession of cocaine with intent to deliver and another count of delivery of the same cocaine which gave rise to the possession conviction, the two convictions merged for sentencing purposes. *Id.* Stated more generally,

> [W]hen the facts show that the defendant's act in violation of crime B could not have been accomplished in any way other than

through prior violation of crime A, the two charges must merge for purposes of sentencing.

*Bilderback v. State*, 13 P.3d 249, 254 (Wyo. 2000).

[¶ 53] Applying these principles to Mr. Bromley's claim, it is clear he could not be sentenced separately for the possession conviction and for the possession with the intent to deliver conviction if the two convictions involved precisely the same methamphetamine. The evidence presented at trial, however, showed that Mr. Bromley possessed methamphetamine both for his own use and for delivery to others. The evidence also showed agents found separate packages of methamphetamine in different quantities in several locations in and around Mr. Bromley's residence. Under these circumstances, separate sentences for possession and possession with intent to deliver were proper.

[¶ 54] Affirmed.