2012 WY 123

**Shawn OSBORNE, Appellant (Defendant),**

v.

**The STATE of Wyoming, Appellee (Plaintiff).**

**No. S–11–0281.**

Supreme Court of Wyoming.

Sept. 13, 2012.

Before KITE, C.J., and GOLDEN, HILL, VOIGT, and BURKE, JJ.

KITE, Chief Justice.

[¶ 1] A Sheridan County jury found Shawn Osborne guilty of first degree murder. He appeals the conviction, claiming his trial counsel was ineffective in failing to properly investigate and seek expert assistance with his defense that he was under the influence of alcohol and amphetamines to such an extent that he could not form the specific intent necessary for first degree murder. We conclude Mr. Osborne has failed to meet his burden of proving he was prejudiced by any deficient performance of trial counsel and affirm his conviction.

## ISSUE

[¶ 2] Mr. Osborne states the issue for this Court's consideration as follows:

> Was Shawn Osborne denied effective assistance of counsel when his trial counsel failed to properly investigate and secure expert testimony thereby violating the Sixth Amendment to the United States Constitution and the requirements of *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984)?

The State phrases the issue as follows:

> Wyoming Statute[ ] § 6–1–202 disallows self-induced intoxication as a defense to a criminal charge, but it allows defendants to offer evidence of it if relevant to negate a specific-intent element of a crime. Osborne's trial counsel offered evidence of self-induced intoxication to negate the premeditation element of the first-degree murder charge but did not present any expert testimony. Was counsel ineffective in failing to use an expert even though he reasonably investigated the facts of Osborne's case and made all the relevant arguments and objections at trial?

## FACTS

[¶ 3] In 2010, the Sheridan County prosecuting attorney charged Mr. Osborne with first degree murder in violation of Wyo. Stat. Ann. § 6–2–101(a) (LexisNexis 2011). According to the affidavit of probable cause attached to the information, Dee Himes came to the Sheridan police department on the afternoon of January 15, 2010, and reported that a dead body was under the trailer home where she and her boyfriend lived. She told police that Mr. Osborne, who also lived in the home, had awakened her and her boyfriend in the early morning hours that same day and told them he had killed Gerald Bloom, another occupant of the trailer home. She stated that she went to Mr. Bloom's bedroom where she saw his body lying on the floor. She said Mr. Osborne told her later that morning that Mr. Bloom's body was buried underneath the trailer home.

[¶ 4] Based upon Ms. Himes' report, police officers went to the trailer home and announced their presence. Mr. Osborne was

the first to respond to the officers. His clothes and arms were stained with blood and he appeared to have been asleep. Inside the trailer home the officers found a knife in the kitchen sink along with cleaning products and what appeared to be diluted blood. The knife was later identified as belonging to Mr. Osborne. The officers also found blood stains on the carpet in one of the bedrooms. The officers found Mr. Bloom's body inside a sleeping bag in the crawl space underneath the trailer home. An autopsy revealed that Mr. Bloom died as a result of stab wounds to the neck.

[¶ 5] Based upon the evidence found at the trailer home and the witness statements, the officers took Mr. Osborne to the police station to be interviewed. During the interview, the officers told Mr. Osborne they had talked to other witnesses and asked Mr. Osborne if he wanted to tell them his side of the story. Mr. Osborne stated that he had gotten into a fight and it went too far. Mr. Osborne then requested an attorney and the officers ended the interview and placed him under arrest.

[¶ 6] Mr. Osborne was charged with first degree murder. He entered a plea of not guilty by reason of mental illness or deficiency. The district court ordered him to be evaluated at the Wyoming State Hospital twice, the first time to determine whether he was mentally fit to proceed pursuant to Wyo. Stat. Ann. § 7–11–303 (LexisNexis 2009) and later to determine whether due to mental illness or deficiency he lacked the capacity at the time of the killing to appreciate the wrongfulness of his conduct or conform his conduct to the requirements of law pursuant to § 7–11–304 (LexisNexis 2011). The state hospital concluded he was mentally fit to proceed and did not lack the capacity to appreciate the wrongfulness of his conduct.

[¶ 7] The case proceeded to trial. The State called David Widiker–Fausset as its first witness. Mr. Widiker–Fausset testified that he and Mr. Osborne had been drinking heavily throughout the evening and early morning hours preceding the killing. He testified that as they drove to the trailer home after the bars closed, Mr. Osborne became agitated and angry about people owing him money, including Mr. Bloom to whom he had loaned $20. Mr. Widiker–Fausset testified that Mr. Osborne continued to be angry and agitated when they arrived at the trailer home. He said Mr. Osborne headed for the bedroom where Mr. Bloom was sleeping, stating that he was going to get his money. According to Mr. Widiker–Fausset, Mr. Osborne said, "Watch this, I'm going to kill that motherfucker." Mr. Widiker–Fausset testified that he followed Mr. Osborne to the bedroom and watched as Mr. Osborne began to choke Mr. Bloom. He said Mr. Bloom struggled and the two men fell to the floor where Mr. Bloom lost consciousness. He said Mr. Osborne checked Mr. Bloom's pulse, determined that he was still alive and then slit Mr. Bloom's throat twice and stabbed him in the neck five or six times.

[¶ 8] Mr. Widiker–Fausset testified that after killing Mr. Bloom, Mr. Osborne washed his hands in the kitchen sink and then went back into the bedroom. According to Mr. Widiker–Fausset, Mr. Osborne came out several minutes later pulling a sleeping bag with Mr. Bloom's body inside. He pulled it out the front door and over to the crawl space under the trailer home. He pulled aside some boards, shoved the sleeping bag containing the body into the crawl space and replaced the boards. Mr. Widiker–Fausset testified that Mr. Osborne then said, "There, I did it," went back inside the trailer home and passed out on the couch. Mr. Widiker–Fausset testified that he, Mr. Osborne and others went to breakfast later that morning. He noticed Mr. Osborne had been drinking again and was still wearing the blood stained clothes he had on when he stabbed Mr. Bloom.

[¶ 9] The State also presented the testimony of a forensic pathologist who examined Mr. Bloom's body after the killing. He confirmed that Mr. Bloom had been strangled around the neck, his throat had been slit twice and he had been stabbed in the neck four times. He testified that two of the stab wounds involved significant force. He also testified Mr. Osborne's knife was consistent with the stab wounds and the slits to the throat.

[¶ 10]   The State played for the jury the video recording of the police interviewing Mr. Osborne.   When officers advised him they had spoken to other witnesses and asked if he wanted to tell his side of the story, Mr. Osborne said that he was "pretty sure what everyone else said is what happened."   He said he had gotten into a fight with Mr. Bloom over money and "went a little too far."   He asked for an attorney, stating "I'm in some deep shit, I know" and said he needed a lawyer to figure out whether "it was gonna be for life or for ten years."

[¶ 11]   The public defender appointed to represent Mr. Osborne attempted to prove Mr. Osborne was so intoxicated at the time of the offense that he was unable to form the specific intent necessary to support a first degree murder conviction.   He presented evidence that Mr. Osborne began drinking on his way home from work on the evening before the killing and continued to drink heavily through the night and into the early morning hours.   He presented evidence that Mr. Osborne drank numerous beers, at least one and possibly two pints of vodka and numerous shots of whiskey.   He also presented evidence that Mr. Osborne had taken Adderall, an amphetamine, shortly before the killing.   Witnesses who were with Mr. Osborne on the night of the killing testified he was drunk.

[¶ 12]   Mr. Osborne testified in his own defense.   He told the jury that he had three beers on his way home from work at 8:00 p.m., and drank a pint of vodka and another beer and a half at his girlfriend's house between 9:00 and 10:00 p.m. He testified that he and his friends then went to the bars where he drank beer and shots of whiskey for the next four hours in addition to taking a couple of Adderall.   He testified that he probably drank five to eight rounds of beer and shots at the first bar and by the time they left for the second bar around 1:00 a.m. he was having a hard time.   He testified that he probably continued drinking beer and shots of whiskey at the second bar but was not sure because he was not very coherent by then. He testified that he may have purchased another pint of vodka before leaving the second bar and remembered opening a

beer when he arrived back at the trailer home.

[¶ 13]   Evidence presented at trial further showed that after killing Mr. Bloom and disposing of the body, Mr. Osborne passed out on the couch.   The next morning he drank another pint of vodka before going to breakfast and more vodka and beer when he returned to the trailer home.   The defense presented evidence that he then passed out on the couch until the police arrived.   The police officers who interviewed Mr. Osborne testified that he smelled of alcohol and acted carefree during the interview possibly because he had been drinking.

[¶ 14]   At the close of the evidence, the district court instructed the jury that if it believed Mr. Osborne at the time of the killing was suffering from self-induced intoxication to such a degree that he was unable to formulate the intent to kill a human being purposely with premeditated malice, it should find him not guilty of first degree murder. The district court also instructed the jury as to the elements of second degree murder and manslaughter. The court instructed the jury that in the event it found Mr. Osborne not guilty of first degree murder, it must decide whether he was guilty of second degree murder or manslaughter.   The jury found Mr. Osborne guilty of first degree murder.

[¶ 15]   After the verdict, another attorney entered an appearance on Mr. Osborne's behalf and the district court entered an order allowing the public defender who had represented him at trial to withdraw.   The new attorney subsequently filed a motion asserting that Mr. Osborne was entitled to a new trial on the basis of newly discovered evidence and ineffective assistance of counsel. The new evidence took the form of Dr. Craig W. Beaver, a forensic neuropsychologist retained after the verdict to examine Mr. Osborne.   Dr. Beaver concluded it was more probable than not that Mr. Osborne was in a substance abuse delirium at the time of the killing leaving him incapable of forming the specific intent necessary for first degree murder.   Mr. Osborne's new attorney argued that trial counsel was ineffective in failing to obtain an expert to explain to the jury what substance abuse delirium is and how it im-

pacted Mr. Osborne's cognitive ability to premeditate or form the intent to kill.

[¶ 16] The district court convened an evidentiary hearing at which time Mr. Osborne's new counsel presented testimony from Dr. Beaver and Mr. Osborne's trial counsel. After the hearing, the district court denied the new trial motion. In summary, the district court concluded any deficient performance by trial counsel did not sufficiently prejudice Mr. Osborne's defense to warrant granting a new trial. The court sentenced Mr. Osborne to life in prison without the possibility of parole. Mr. Osborne timely appealed to this Court from the judgment and sentence.

## STANDARD OF REVIEW

[¶ 17] Claims of ineffective assistance of counsel involve mixed questions of law and fact; consequently, our review is *de novo*. *Ken v. State*, 2011 WY 167, ¶ 27, 267 P.3d 567, 574 (Wyo.2011).

## DISCUSSION

[¶ 18] Mr. Osborne asserts his trial counsel was ineffective in failing to adequately investigate and seek expert assistance with his voluntary intoxication defense. He submits that substance abuse was clearly an issue from the beginning in this case and voluntary intoxication was his only viable defense at trial. He further submits that an evaluation by an independent mental health examiner was essential to adequately investigate his defense. Upon an expert's finding that he was in a substance abuse delirium and incapable of forming the specific intent necessary to support his conviction, he contends expert testimony was necessary to explain to the jury what substance abuse delirium is and how it impacted his cognitive function. The State responds that trial counsel reasonably investigated and argued the intoxication defense at trial and, in any event, Mr. Osborne cannot show that any deficiency in his trial counsel's performance prejudiced the defense.

[¶ 19] To prevail on a claim of ineffective assistance of counsel, a defendant must first establish that trial counsel's performance was deficient. *Ken*, ¶ 27, 267 P.3d at 574, citing *Sanchez v. State*, 2011 WY 77, ¶ 40, 253 P.3d 136, 147 (Wyo.2011); *Strickland v. Washington*, 466 U.S. 668, 690–91, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). This requires a showing that counsel failed to render such assistance as would have been offered by a reasonably competent attorney. *Ken*, ¶ 27, 267 P.3d at 574. Assuming a sufficient showing that counsel performed deficiently, a defendant must also prove the deficient performance prejudiced the defense. *Id.* That is, a defendant must show a reasonable probability exists that, but for counsel's deficient performance, the outcome would have been different. *Id.* In order to prevail on an ineffectiveness claim, a defendant must prove both deficient performance and prejudice. The failure to make the required showing of either deficient performance or prejudice will result in a finding that counsel was not ineffective. *Id.*

[¶ 20] Counsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary. *Lopez v. State*, 2004 WY 28, ¶ 29, 86 P.3d 851, 860 (Wyo.2004), citing *McCoy v. State*, 886 P.2d 252, 254 (Wyo.1994). When an ineffective assistance claim is based upon the failure to call an expert witness, the defendant must show an expert was available who would have testified consistently with his theory. *Id.*, ¶ 30, 86 P.3d at 860. However, upon making a showing that counsel did not reasonably investigate or unreasonably failed to call an expert witness, a defendant still must show that the deficient performance prejudiced him.

[¶ 21] In the present case, the record demonstrates that trial counsel presented, and the jury rejected, the defense that Mr. Osborne was too intoxicated to form the specific intent necessary for a first degree murder conviction. The jury heard testimony that Mr. Osborne was a heavy drinker and regularly consumed a pint of vodka after work on the drive home from Buffalo to Sheridan. His girlfriend testified that he drank on a daily basis, it was more common than not for him to be drinking and she had

only seen him a couple of times when he was not drinking.

[¶ 22] The jury also heard testimony that Mr. Osborne had been drinking heavily on the night of the killing from the time he left Buffalo at approximately 8:00 p.m. until 2:30 or 3:00 the next morning and that he had taken a couple of Adderall sometime between 10:00 p.m. and 1:00 a.m. that night. Witnesses testified that Mr. Osborne drank a lot over the course of the night, was drunk when they were at the first bar, and continued to drink beer and shots of whiskey at the second bar. Mr. Widiker–Fausset told the jury that after killing Mr. Bloom and putting his body in the crawl space, Mr. Osborne returned to the trailer home and passed out on the couch. There simply is no question defense counsel presented evidence showing that Mr. Osborne was suffering from self-induced intoxication at the time of the killing. Based upon the district court's instruction, the jury knew that it must find Mr. Osborne not guilty of first degree murder if it had reasonable doubt that his condition left him unable to form the specific intent to kill with premeditated malice.

[¶ 23] Despite the evidence, instruction and argument presented concerning Mr. Osborne's level of intoxication, Mr. Osborne argues trial counsel was ineffective because he did not seek expert assistance to adequately explain to the jury the effect his alcohol and amphetamine consumption likely had on his ability to form the intent necessary to support a first degree murder conviction. He maintains that if expert testimony had been presented, it is reasonably probable the jury would not have convicted him of first degree murder. We are not persuaded.

[¶ 24] Mr. Widiker–Fausset testified that Mr. Osborne was angry at Mr. Bloom and said he was going to kill him. Mr. Widiker–Fausset further testified that Mr. Osborne attacked Mr. Bloom, grabbing him around the neck with his arm and putting him in a choke hold. Mr. Osborne himself testified that he choked Mr. Bloom "as hard as he could until he stopped moving" and released his choke hold only when Mr. Bloom was no longer moving. Mr. Widiker–Fausset testified that upon indications that Mr. Bloom was still alive, Mr. Osborne slit his throat twice and then stabbed him in the neck five or six times. The forensic pathologist testified the force of the chokehold broke Mr. Bloom's trachea and the stab wounds were inflicted with significant force.

[¶ 25] Immediately after killing Mr. Bloom and despite his inebriated condition, Mr. Osborne washed the blood from his hands and knife, put Mr. Bloom's body in a sleeping bag, pulled it out of the bedroom, through the trailer home and outside where he placed it in the crawl space and attempted to conceal it by covering the opening with boards. Perhaps most damning of all, after continuing to consume alcohol on the day following the killing, Mr. Osborne was lucid and responsive in his interactions with police officers, all but admitted killing Mr. Bloom and was very much aware of the seriousness of his crime.

[¶ 26] The evidence against Mr. Osborne was overwhelming. Given the strength of that evidence, we simply are not persuaded that a reasonable probability exists that but for any failure on defense counsel's part to investigate and present expert testimony concerning substance abuse delirium, the outcome would have been different. Even with such expert testimony, we conclude the probability in this case is that the jury would have convicted Mr. Osborne of first degree murder.

[¶ 27] We affirm Mr. Osborne's first degree murder conviction.

VOIGT, Justice, specially concurring.

[¶ 28] I concur in the result reached by the majority because that result is mandated by precedent. I write separately only to give voice to a concern we all should have with the *Strickland* standard cited in the majority, a standard that we have followed for years. The problem is that, while it is often relatively easy to prove defense counsel's deficient performance, it is practically impossible to prove prejudice because it is practically impossible to prove that the outcome would have been different had the jury been allowed to hear certain evidence. This is especially true because our system does not allow

a defendant to query the jury about its deliberations. W.R.E. 606(b); U.R.D.C. 701.

[¶ 29] In finding a lack of prejudice, the majority states that the evidence of guilt was overwhelming. *See supra* ¶ 26. We frequently rely upon that rationale in finding no prejudice under *Strickland. See, e.g., Sincock v. State,* 2003 WY 115, ¶ 59, 76 P.3d 323, 342 (Wyo.2003). Of course, where defense counsel has failed to produce evidence, it is likely to appear that the State's evidence is overwhelming. A pair of deuces is overwhelming where one's opponent folds without showing his cards.

[¶ 30] In the instant case, defense counsel recognized that the only defense available to the defendant was the argument that the combination of alcohol consumption and the ingestion of the drug Adderall rendered the defendant incapable of forming the specific intent to kill. At the hearing upon the motion for a new trial, subsequent counsel produced evidence through an expert forensic neuropsychologist that the defendant likely was suffering from substance abuse delirium, which would have left him incapable of forming the necessary specific intent. This question is so obviously beyond the ken of the average person that defense counsel's mention during the jury trial of the defendant's use of Adderall was meaningless without expert testimony. The only way to counter "overwhelming" evidence is with contrary evidence. Counsel's deficiency in this regard was glaring.

[¶ 31] The point I wish to make is that where defense counsel's performance has been shown to be so ineffective as to deprive the defendant of that counsel assured him by the Sixth Amendment, we cannot rely upon the adversarial process as having produced a just trial. Nevertheless, we continue to require the appellant to prove the impossible-that the results would have been different. *See, e.g., Montez v. State,* 2009 WY 17, ¶ 3, 201 P.3d 434, 436 (Wyo.2009); *Harlow v. State,* 2005 WY 12, ¶ 45, 105 P.3d 1049, 1069 (Wyo.2005). It seems that there should be some line of egregiousness that, when crossed, the presumption becomes one of ineffectiveness.