# IN THE SUPREME COURT, STATE OF WYOMING

## 2014 WY 99

### APRIL TERM, A.D. 2014

### August 6, 2014

LUIS GERARDO ORTEGA-ARAIZA,

Appellant
(Defendant),

v.

S-13-0242

THE STATE OF WYOMING,

Appellee
(Plaintiff).

*Appeal from the District Court of Laramie County*
*The Honorable Peter G. Arnold, Judge*

*Representing Appellant:*
>   Office of the State Public Defender: Diane M. Lozano, State Public Defender; Tina N. Olson, Chief Appellate Counsel; Kirk A. Morgan, Senior Assistant Appellate Counsel. Argument by Mr. Morgan.

*Representing Appellee:*
>   Peter K. Michael, Wyoming Attorney General; David L. Delicath, Deputy Attorney General; Jenny L. Craig, Senior Assistant Attorney General; Megan L. Nicholas, Assistant Attorney General. Argument by Ms. Nicholas.

*Before BURKE, C.J., and HILL, KITE,\* DAVIS, and FOX, JJ.*

*\*Chief Justice at time of oral argument.*

**NOTICE: This opinion is subject to formal revision before publication in Pacific Reporter Third. Readers are requested to notify the Clerk of the Supreme Court, Supreme Court Building, Cheyenne, Wyoming 82002, of any typographical or other formal errors so that correction may be made before final publication in the permanent volume.**

**FOX**, **Justice**.

[¶1]   Luis Ortega-Araiza pled guilty to strangling his girlfriend (a household member) in violation of Wyo. Stat. Ann. § 6-2-509(a)(i)(b) (LexisNexis 2013).   Prior to his sentencing, he learned that his guilty plea would result in his deportation, and he moved to withdraw the plea, claiming ineffective assistance of counsel.  The district court agreed that Mr. Ortega-Araiza's counsel should have advised Mr. Ortega-Araiza that he would be deported upon conviction, as required by *Padilla v. Kentucky*, 559 U.S. 356, 130 S.Ct. 1473, 176 L.Ed.2d 284 (2010).  However, the district court found that Mr. Ortega-Araiza failed to prove the prejudice prong required for an ineffective assistance of counsel claim and denied Mr. Ortega-Araiza's motion to withdraw his guilty plea, sentencing him to two to four years imprisonment.  We reverse.

## ISSUES

[¶2]   We restate the issues as follows:

> 1.   Was Mr. Ortega-Araiza prejudiced by his counsel's deficient performance?

> 2.   Did the district court's warning during the plea colloquy cure the prejudice suffered by Mr. Ortega-Araiza?

> 3.   Did the warning in the plea agreement cure the prejudice suffered by Mr. Ortega-Araiza?

> 4.   Did the district court abuse its discretion when it denied Mr. Ortega-Araiza's motion to withdraw his guilty plea?

## FACTS

[¶3]   Luis Ortega-Araiza is a resident alien, who has been living in the United States legally since 1980.  Mr. Ortega-Araiza has had numerous minor brushes with the law.  He faced his first felony charge, however, after the authorities were called to the residence he shared with his girlfriend to respond to a domestic disturbance.  Mr. Ortega-Araiza was charged with strangulation of a household member in violation of Wyo. Stat. Ann. § 6-2-509(a)(i)(b), and was arraigned on November 26, 2012, when he pled not guilty.  Just before the scheduled jury trial, on March 18, 2013, Mr. Ortega-Araiza and the State entered into a Plea Agreement for Recommended Disposition.  The district court held a change of plea hearing the same day, at which Mr. Ortega-Araiza pled guilty to the charge of strangulation of a household member in violation of Wyo. Stat. Ann. § 6-2-509(a)(i)(b).  At the change of plea hearing, the district court advised Mr. Ortega-Araiza of his rights pursuant to the Wyoming Rules of Criminal Procedure.  In addition, the

1

district court cautioned Mr. Ortega-Araiza, "If you are not a U.S. citizen, certain felony convictions may be the basis for deportation proceedings by the ICE [Immigration and Customs Enforcement]." Moreover, the Plea Agreement for Recommended Disposition, signed by Mr. Ortega-Araiza, stated, "The Defendant understands that this plea(s) may result in negative consequences regarding any immigration or visa status, including potential deportation and inability to return to this country."

[¶4]  After the change of plea hearing, counsel for Mr. Ortega-Araiza discovered Mr. Ortega-Araiza's alien status. Knowing that Mr. Ortega-Araiza would face deportation if the plea went forward,[1] counsel moved to withdraw Mr. Ortega-Araiza's guilty plea. In the motion, counsel admitted that he provided ineffective assistance when he failed to advise Mr. Ortega-Araiza concerning the immigration consequences of a guilty plea, in violation of *Padilla v. Kentucky*, 559 U.S. 356, 130 S.Ct. 1473. The State opposed the motion, and the district court held a hearing on June 17, 2013. On July 15, 2013, the district court entered an order denying Mr. Ortega-Araiza's motion to withdraw his guilty plea. While the district court determined that Mr. Ortega-Araiza had succeeded in demonstrating that his counsel's performance was deficient, it also found that Mr. Ortega-Araiza failed to prove the prejudice prong of his ineffective assistance of counsel claim. The district court stated:

> Under the circumstances of this case, the Court finds [that Mr. Ortega-Araiza] has failed to prove he was prejudiced by counsel's deficient performance. [Mr. Ortega-Araiza] failed to provide the Court with any information regarding how the outcome of this proceeding would have been different had his counsel advised him of [the] possibility of deportation. Rather defense counsel at the hearing suggested that if allowed to withdraw his guilty plea the parties may be able to reach another plea agreement. . . . Additionally, Mr. Ortega[-Araiza] was advised twice of the possible risk of deportation before he pled guilty. Mr. Ortega[-Araiza] specifically acknowledged the possible risk of deportation when he signed the plea agreement. . . . [Mr. Ortega-Araiza] was also advised by the Court during re-arraignment of the risk of deportation. . . . Despite counsel's failure, Mr. Ortega[-Araiza] was informed of the possibility of deportation and pled guilty anyways. Given the circumstances the Court cannot find [that Mr. Ortega-Araiza]

---

[1] The Immigration and Nationality Act states that, "Any alien who is convicted of an aggravated felony at any time after admission is deportable." 8 U.S.C. § 1227 (a)(2)(A)(iii) (2012).

2

was prejudiced by defense counsel's failure. Thus the Court finds that [defense counsel] was not ineffective.

The district court then went on to sentence Mr. Ortega-Araiza, in accordance with his earlier guilty plea, to two to four years in prison. Mr. Ortega-Araiza filed a timely notice of appeal.

## *DISCUSSION*

### *I. Was Mr. Ortega-Araiza prejudiced by his counsel's deficient performance?*

[¶5]   "Claims of ineffective assistance of counsel involve mixed questions of law and fact[.]" *Osborne v. State*, 2012 WY 123, ¶ 17, 285 P.3d 248, 252 (Wyo. 2012). We review such claims *de novo*. *Id.*

[¶6]   In *Frias v. State*, 722 P.2d 135 (Wyo. 1986), we adopted the two-prong test set forth in *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), to determine whether a defendant received effective assistance of counsel. *Frias*, 722 P.2d at 145. The defendant must establish first, that counsel's performance was deficient, and second, that the defendant was prejudiced as a result of that deficient performance. *Id.*; *see also McGarvey v. State*, 2014 WY 66, ¶¶ 13-14 325 P.3d 450, 454-55 (Wyo. 2014) (discussing ineffective assistance of counsel).

[¶7]   In 2010, the United States Supreme Court held that attorneys have an affirmative duty to inform clients of immigration consequences of criminal convictions in *Padilla*, 559 U.S. 356, 130 S.Ct. 1473. Discussing the importance of the deportation risks among alien criminal defendants, the court found that often adverse immigration consequences are of greater concern than prison terms. *Id.* at 365-66, 368, 130 S.Ct. at 1481, 1483. The court examined the "prevailing professional norms" to determine whether failing to inform a client of adverse immigration consequences in the criminal context "fell below an objective standard of reasonableness" in accordance with *Strickland*, and held that "[t]he weight of prevailing professional norms supports the view that counsel must advise her client regarding the risk of deportation." *Id.* at 366-67, 130 S.Ct. at 1482; *Strickland*, 466 U.S. at 688, 104 S.Ct. at 2064. Since *Padilla*, criminal defense attorneys must advise alien clients of immigration repercussions to provide effective assistance of counsel.

[¶8]   This Court was presented with the same issue in *Valle v. State*, 2006 WY 43, 132 P.3d 181 (Wyo. 2006), prior to the United States Supreme Court ruling in *Padilla*. In *Valle*, we stated that "[t]he law concerning whether a defendant must be advised about immigration consequences before entering a guilty plea is well settled. Immigration consequences are a collateral issue and no advice need be given to a defendant

3

concerning those consequences[.]" *Valle*, 2006 WY 43, ¶ 9, 132 P.3d at 184.[2] The United States Supreme Court rejected this approach in *Padilla*, stating:

> We . . . have never applied a distinction between direct and collateral consequences to define the scope of constitutionally "reasonable professional assistance" required under *Strickland*, 466 U.S. [] at 689, 104 S.Ct. [at] 2052. Whether that distinction is appropriate is a question we need not consider in this case because of the unique nature of deportation.
>
> . . . .
>
> Deportation as a consequence of a criminal conviction is, because of its close connection to the criminal process, uniquely difficult to classify as either a direct or a collateral consequence. The collateral versus direct distinction is thus ill suited to evaluating a *Strickland* claim concerning the specific risk of deportation. We conclude that advice regarding deportation is not categorically removed from the ambit of the Sixth Amendment right to counsel. *Strickland* applies to Padilla's claim.

*Padilla*, 559 U.S. at 365-66, 130 S.Ct. at 1481-82. The collateral/direct consequences distinction can no longer be relied upon in the immigration context. To the extent that our decision in *Valle* applies to the advice an attorney must provide to his client regarding deportation consequences of a guilty plea, it is overruled.

[¶9] In this case, all parties, and the district court, have conceded that counsel's performance was deficient when he failed to advise Mr. Ortega-Araiza of the immigration consequences of a guilty plea in accordance with the mandates of *Padilla*. Thus, the issue before us is whether the district court correctly found that Mr. Ortega-Araiza failed to prove the prejudice prong of the *Strickland* test.

---

[2] Prior to *Padilla*, and at the time of this Court's decision in *Valle*, the prevailing opinion concerning the advice that must be given by counsel distinguished between the direct and collateral consequences of a guilty plea. *United States v. Fry*, 322 F.3d 1198, 1200 (9th Cir. 2003) ("deportation is a collateral, not direct, consequence of the criminal process"); *United States v. Gonzalez*, 202 F.3d 20, 25 (1st Cir. 2000); *United States v. Banda*, 1 F.3d 354, 356 (5th Cir. 1993); *Varela v. Kaiser*, 976 F.2d 1357, 1358 (10th Cir. 1992) ("Actual knowledge of the consequences that are collateral to the guilty plea is not a prerequisite to the entry of a knowing and intelligent plea."); *United States v. Del Rosario*, 902 F.2d 55, 59 (D.C. Cir. 1990); *United States v. Yearwood*, 863 F.2d 6, 7-8 (4th Cir. 1988).

[¶10]   The district court determined that Mr. Ortega-Araiza was required to demonstrate that the outcome of the proceeding would have been different had counsel for the defendant effectively performed his duties.  Because he failed to make this showing, the district court held he suffered no prejudice as a result of his counsel's deficient performance.  This Court has previously determined the standard to be used when a defendant attempts to withdraw a guilty plea prior to sentencing.  In *Palmer v. State*, 2008 WY 7, 174 P.3d 1298 (Wyo. 2008), and most recently in *Turner v. State*, 2014 WY 75, ¶ 15, 327 P.3d 100, 105 (Wyo. 2014), we stated that to prove prejudice in these cases, the defendant "must show that there is a reasonable probability that, but for counsel's errors, a plea of guilty would not have been entered and the defendant would have insisted on going to trial."[3]  *Palmer*, 2008 WY 7, ¶ 18, 174 P.3d at 1302; *see also Bonney v. Wilson*, No. 13-8052, 2014 WL 2619800, at *14 (10th Cir. June 13, 2014) (discussing the standard as set forth in *Hill v. Lockhart*, 474 U.S. 52, 106 S.Ct. 366, 88 L.Ed.2d 203 (1985)).

[¶11]   We find that there is ample evidence to demonstrate a reasonable probability that Mr. Ortega-Araiza would have rejected the plea and insisted on going to trial had counsel advised Mr. Ortega-Araiza of his almost assured deportation upon entering such a plea.  *See Bonney*, No. 13-8052, 2014 WL 2619800, at *6-*8 (stating that the standard to be applied to the prejudice prong in *Strickland* is objective rather than subjective).  The record indicates that a reasonable person in Mr. Ortega-Araiza's shoes would wish to remain in the United States.  He has lived in this country for nearly thirty-five years; he has two grown children living in the United States, both of whom were born here; and he buried his late wife and a daughter in this country.  While Mr. Ortega-Araiza may have received a suspended sentence as a result of the plea agreement, he would still be facing mandatory deportation upon conviction.  It would, therefore, be entirely reasonable for Mr. Ortega-Araiza to reject the plea and insist on going to trial (or seek a different plea agreement with lesser deportation consequence) as he was facing deportation whether he was convicted pursuant to a plea agreement or as a result of a trial.  Better to gamble on an acquittal at trial, than the assured conviction and deportation resulting from a guilty plea.  Possibly the most telling piece of evidence demonstrating that there was a reasonable probability of Mr. Ortega-Araiza rejecting the plea had he known of the immigration consequences, however, was the motion to withdraw his guilty plea made within days of learning of those consequences.  Had Mr. Ortega-Araiza already known he would be deported or had he been indifferent to the impacts, he would not have moved to

---

[3] The *Padilla* court recognized that trial may not be the only option when counsel effectively advises a client of deportation consequences.  "Counsel who possess the most rudimentary understanding of the deportation consequences of a particular criminal offense may be able to plea bargain creatively with the prosecutor in order to craft a conviction and sentence that reduce the likelihood of deportation[.]" *Padilla*, 559 U.S. at 373, 130 S.Ct. at 1486.

5

withdraw the plea, and instead, would have simply moved forward to the sentencing stage of the proceedings.

[¶12]  The State argues that Mr. Ortega-Araiza suffered no prejudice as he was already subject to deportation prior to his felony conviction.  According to the State, Mr. Ortega-Araiza was deportable as early as 2011, prior to being charged with the felony at issue here, and "[b]ecause he faced deportation regardless of the outcome of this proceeding, [Mr. Ortega-Araiza] did not suffer prejudice from trial counsel's failure to inform him of the immigration consequences of his guilty plea."

[¶13]  Although it is true that Mr. Ortega-Araiza was deportable prior to this latest offense, it is not correct to say his status was unchanged.  Upon his felony conviction, Mr. Ortega-Araiza was upgraded as a priority for deportation.  In a memorandum dated March 2, 2011, John Morton, the director of ICE, set forth the agency priorities for deportation of aliens.  Memorandum from ICE director John Morton on Civil Immigration Enforcement 1-2 (March 2, 2011), *available at*, http://www.ice.gov/doclib/news/releases/2011/110302Washingtondc.pdf.  According to that memorandum, "[a]liens who pose a danger to national security or a risk to public safety" are priority one.  *Id.*  Within that designation, however, ICE has further divided deportation priorities into different offender levels.  The memorandum states:

> For purposes of prioritizing the removal of aliens convicted of crimes, ICE personnel should refer to the following new offense levels defined by the Secure Communities Program, . . .  These new Secure Communities levels are given in rank order and shall replace the existing Secure Communities levels of offenses.
>
> - Level 1 offenders: aliens convicted of "aggravated felonies," as defined in § 101(a)(43) of the Immigration and Nationality Act, or two or more crimes each punishable by more than one year, commonly referred to as "felonies";
> - Level 2 offenders: aliens convicted of any felony or three or more crimes each punishable by less than one year, commonly referred to as "misdemeanors"; and
> - Level 3 offenders: aliens convicted of crimes punishable by less than one year.

*Id.* at 2.  Prior to his felony conviction, Mr. Ortega-Araiza was a Level 2 offender.  Mr. Ortega-Araiza had been convicted of three or more crimes, but all were misdemeanors

punishable by less than one year. Following his conviction, however, Mr. Ortega-Araiza became an "aggravated felon" as defined by the Immigration and Nationality Act. "The term 'aggravated felony' means . . . a crime of violence[4] . . . for which the term of imprisonment at least one year." 8 U.S.C. § 1101(a)(43)(F) (2012). Following his plea, the district court convicted Mr. Ortega-Araiza of a crime of violence – strangulation of a household member – and his punishment amounted to a term of imprisonment for more than one year. *See* 18 U.S.C. §16 (2012) (defining "crime of violence); *see also* Wyo. Stat. Ann. § 6-2-509(a)(i)(b) ("A person is guilty of strangulation of a household member if he intentionally and knowingly or recklessly causes or attempts to cause bodily injury to a household member by impeding the normal breathing or circulation of blood[.]"). As a result of his felony conviction, Mr. Ortega-Araiza became an "aggravated felon," and thus, also became a Level 1 offender – ICE's highest priority for deportation. Memorandum at 2; *see also* 8 U.S.C. § 1227(a)(2)(A)(iii) (2012) (making conviction of an "aggravated felony" a deportable offense). The result of the plea was to upgrade Mr. Ortega-Araiza's deportation status, and he suffered prejudice as a result.

[¶14] We reverse the district court's ruling that Mr. Ortega-Araiza failed to prove the prejudice prong of the *Strickland* test, and find that Mr. Ortega-Araiza did in fact suffer prejudice as a result of his counsel's deficient performance.

## II. Did the district court's warning during the plea colloquy cure the prejudice suffered by Mr. Ortega-Araiza?

[¶15] Courts are divided on the issue of whether advisements given by a district court can cure the deficient performance of defense counsel in failing to warn a client of adverse immigration consequences. Some have determined that an advisement during the plea colloquy can cure any prejudice. *State v. Martinez*, 729 S.E.2d 390, 456-57 (Ga. 2012); *Mendoza v. United States*, 774 F.Supp.2d 791, 799 (E.D. Va. 2011). These courts reason that, because a defendant is made aware, through the plea colloquy, that deportation is a possible consequence of a conviction, no prejudice can be suffered by the defendant. *Martinez*, 729 S.E.2d at 456-57 ("A trial court's plea colloquy . . . generally shows that the defendant cannot demonstrate prejudice or that any prejudice was

---

[4] A crime of violence is defined as:

> [A]n offense that has as an element the use, attempted use, or threatened use of physical force against the person or property of another, or

> [A]ny other offense that is a felony and that, by its nature, involved a substantial risk that physical force against the person or property of another may be used in the course of committing the offense.

18 U.S.C. § 16 (2012).

cured[.]"); *Mendoza*, 774 F. Supp.2d at 799 (finding that because the petitioner was advised during the Rule 11 colloquy, petitioner's "ineffective assistance of counsel claim flatly fails on the prejudice prong").

[¶16]   Other courts have found that the plea colloquy is insufficient on the specific facts of the case, finding that the colloquy was too general and failed to specifically warn the defendant that deportation was nearly certain. *United States v. Akinsade*, 686 F.3d 248, 255 (4th Cir. 2012) (finding that a trial court's general admonishment concerning immigration consequences could not cure misadvice by counsel, unless specific); *Hernandez v. State*, 124 So.3d 757, 763 (Fla. 2012) ("[A]n equivocal warning from the trial court . . . cannot, by itself, remove prejudice resulting from counsel's deficiency."). These courts leave open the possibility that a specific colloquy directed to individual defendants may cure any prejudice suffered. Others, however, have found that the plea colloquy cannot cure the prejudice suffered when an attorney fails in his duty to inform his client of immigration repercussions. *State v. Favela*, 311 P.3d 1213, 1221-22 (N.M. Ct. App. 2013), *cert. granted*, 313 P.3d 251 (2013) ("[A] court's warning . . . is never, by itself, sufficient to cure the prejudice that results from ineffective assistance of counsel[.]"); *State v. Sandoval*, 249 P.3d 1015, 1020-21 (Wash. 2011) ("[T]he guilty plea statement warnings . . . cannot save the advice that counsel gave.").

[¶17]   We find that the district court's generic advisement could not compensate for defense counsel's failure to adequately advise his client as required by *Padilla*, 559 U.S. 356, 130 S.Ct. 1473, and was insufficient to cure the prejudice suffered by Mr. Ortega-Araiza as it failed to specifically warn him that he would, with all probability, be deported as a result of his guilty plea.

[¶18]   At the change of plea hearing, the district court orally advised Mr. Ortega-Araiza, "If you are not a U.S. citizen, certain felony convictions may be the basis for deportation proceedings by the ICE."   The district court determined that because it advised Mr. Ortega-Araiza that the plea may have immigration consequences, Mr. Ortega-Araiza suffered no prejudice.   The warning given by the district court, however, is insufficient under the mandates of *Padilla*, 559 U.S. 356, 130 S.Ct. 1473.   In *Padilla*, the Supreme Court stated that when immigration repercussions are "unclear or uncertain," counsel has a limited responsibility in advising a client that "pending criminal charges may carry a risk of adverse immigration consequences."   *Id.* at 369, 130 S.Ct. at 1483.   However, "when the deportation consequence is truly clear, . . . the duty to give correct advice is equally clear."   *Id.*; *see also United States v. Bonilla*, 637 F.3d 980, 984 (9th Cir. 2011) ("A criminal defendant who faces almost certain deportation is entitled to know more than that it is *possible* that a guilty plea could lead to removal; he is entitled to know that it is a virtual certainty.").

8

[¶19]  In this case, the deportation consequences of a guilty plea by Mr. Ortega-Araiza were "truly clear."  *See* 8 U.S.C. § 1101(a)(43)(F) (defining "aggravated felony"); *see also* 8 U.S.C. § 1227(a)(2)(A)(iii) (making a conviction on an "aggravated felony" a deportable offense); *see also Padilla*, 559 U.S. at 368, 130 S.Ct. at 1483 ("Padilla's counsel could have easily determined that his plea would make him eligible for deportation simply from reading the text of the statute[.]").  In fact, following the discovery that Mr. Ortega-Araiza was a resident alien, none of the parties involved questioned that Mr. Ortega-Araiza would be subject to deportation upon conviction.  Because it was clear that deportation would result from a conviction, the advice concerning that result was required to be equally clear.  *Padilla*, 559 U.S. at 369, 130 S.Ct. at 1483.  Instead of plainly warning Mr. Ortega-Araiza that he **would** be subject to deportation upon the entry of a guilty plea and a subsequent conviction, the district court stated only that a plea "**may** be the basis for deportation proceedings by the ICE."[5] (Emphasis added.)  A warning such as this would be insufficient under *Padilla* if provided by Mr. Ortega-Araiza's own defense counsel, and becomes no more sufficient when provided by the district court.  *See People v. Kazadi*, 284 P.3d 70, 74 (Colo. App. 2011) ("Here, even limited research would have disclosed that Kazadi's guilty plea would subject him to presumptive mandatory removal . . . .  Thus, counsel had a duty to advise Kazadi correctly regarding those consequences."); *see also Ex parte Tanklevskaya*, 361 S.W.3d 86, 97 (Tex. App. 2011) (concluding that because the immigration consequences were "truly clear in this case plea counsel had a duty to inform applicant of the specific consequences of her guilty plea") (judgment vacated on other grounds).

[¶20]  Although there may be an instance where a trial court could adequately warn a defendant of the deportation consequences of his plea,[6] that did not happen in this case.

---

[5] Although the district court is not required to advise each defendant concerning the specific immigration consequences of a conviction, in order to ensure compliance with the law it may ask a defendant directly where he was born.  If the defendant's reply is anywhere but the United States, the district court may then inquire of defense counsel whether the defendant has been given the advice required by *Padilla*, thus ensuring that defense counsel fulfills that duty. The burden should remain with defense attorneys to counsel their clients regarding immigration repercussions.  *Akinsade*, 686 F.3d at 255 ("When, as here, the claim raised is that of ineffective assistance of *counsel,* the overall focus must be on the prejudice arising from *counsel's* deficient performance, [not on that of the district court].").

[6] The district court and the attorney representing the accused fulfill complementary, but distinct, roles in the criminal justice system.  Both possess duties aimed at ensuring that the accused receives fair and just treatment under the law.  The approaches to assuring that these duties are carried out, however, diverge significantly.  The district court is, and must remain, a neutral arbiter – advising the defendant of his rights, but not advocating on his behalf.  *Favela*, 311 P.3d at 1222 (citing Danielle M. Lang, Note, *Padilla v. Kentucky: The Effect of Plea Colloquy on Defendants' Ability to Bring Successful Padilla Claims*, 121 Yale. L.J. 944, 966 (2012)).  Counsel for the defendant, however, is charged with the duty of investigating, advising and zealously advocating for his client.  *Strickland*, 466 U.S. at 688, 104 S.Ct. at 2065; *Favela*, 311 P.3d at 1222.

9

We find that the plea colloquy given by the district court to Mr. Ortega-Araiza was inadequate and cannot cure the prejudice suffered by Mr. Ortega-Araiza.

### III. Did the warning in the plea agreement cure the prejudice suffered by Mr. Ortega-Araiza?

[¶21]  The plea agreement Mr. Ortega-Araiza executed contained advisements of certain rights, including:

> The Defendant understands that this plea(s) may result in negative consequences regarding any immigration or visa status, including potential deportation and inability to return to this country.

As discussed above, the general nature of the advisement included in the plea agreement is insufficient under *Padilla*, 559 U.S. at 369, 130 S.Ct. at 1483.  The plea agreement, utilizing language similar to that used by the district court, warned Mr. Ortega-Araiza that he may be subject to deportation, but failed to advise that Mr. Ortega-Araiza's deportation was a virtual certainty upon conviction.  *See Padilla*, 559 U.S. at 369, 130 S.Ct. at 1483 (stating that when the immigration consequence is clear, the advice must be equally clear).  A general warning is insufficient, whether given by defense counsel or the State.  *Id.*; *see also Bonilla*, 637 F.3d at 984 ("A criminal defendant who faces almost certain deportation is entitled to know more than that it is *possible* that a guilty plea could lead to removal; he is entitled to know that it is a virtual certainty.").  As a result, the plea agreement caution cannot cure the prejudice suffered by Mr. Ortega-Araiza.

---

Fusing the roles of the district court judge and defense attorney implicates constitutional guarantees which provide for effective assistance of counsel at every stage of a criminal proceeding. *Johnson v. Zerbst*, 304 U.S. 458, 462-63, 58 S.Ct. 1019, 1022-23, 82 L.Ed. 1461 (1938), *quoted in Gideon v. Wainwright*, 372 U.S. 335, 342-45, 83 S.Ct. 792, 796 (1963).  As the United States Supreme Court has stated:

> [H]ow can a judge, whose functions are purely judicial, effectively discharge the obligations of counsel for the accused?  He can and should see to it that in the proceedings before the court the accused shall be dealt with justly and fairly.  [But, h]e cannot investigate the facts, advise and direct the defense, or participate in those necessary conferences between counsel and [the] accused which sometimes partake of the inviolable character of the confessional.

*Powell v. Alabama*, 287 U.S. 45, 61, 53 S.Ct. 55, 61, 77 L.Ed. 158 (1932).

[¶22] Even if the plea agreement's caution concerning possible immigration consequences had been sufficiently clear, such a warning by the State would still prove insufficient to adequately apprise a defendant of the immigration repercussions related to a guilty plea. As the United States Supreme Court noted, "deportation is a particularly severe penalty," and "[p]reserving the client's right to remain in the United States may be more important to the client than any potential jail sentence." *Padilla*, 559 U.S. at 365, 368, 130 S.Ct. at 1481, 1483 (citation omitted). With such an important consideration at stake, the boilerplate language contained in a plea agreement cannot substitute for the reasoned and thoughtful discourse between defense counsel and his client. *See Favela*, 311 P.3d at 1222 ("The right to effective assistance of counsel amounts to more than simply relaying information."). Unlike the State in a criminal prosecution, defense counsel possesses "the overarching duty to advocate the defendant's cause and the more particular duties to consult with the defendant on important decisions and to keep the defendant informed of important developments in the course of the prosecution." *Strickland*, 466 U.S. at 688, 104 S.Ct. at 2065. These are duties that a plea agreement cannot perform. As we have explained, *see supra* n.6, it would be difficult for a court to provide the advice necessary to cure ineffective assistance of counsel in cases where *Padilla* is implicated. That bar is even higher when such advice comes from the State.

[¶23] For these reasons, we find that the plea agreement advisement concerning possible immigration consequences does not cure the prejudice suffered by Mr. Ortega-Araiza.

## IV.  Did the district court abuse its discretion when it denied Mr. Ortega-Araiza's motion to withdraw his guilty plea?

[¶24] Wyoming Rule of Criminal Procedure 32(d) provides, in pertinent part, "If a motion for withdrawal of a plea of guilty or nolo contendere is made before sentence is imposed, the court may permit withdrawal of the plea upon a showing by the defendant of any fair and just reason." When determining whether to grant a motion to withdraw a plea of guilty before sentencing, the district court considers whether the strictures of W.R.Cr.P. 11 were met at the plea hearing, or whether the defendant presented a fair and just reason justifying the withdrawal of the guilty plea. *Frame v. State*, 2001 WY 72, ¶ 7, 29 P.3d 86, 89 (Wyo. 2001); *Russell v. State*, 2013 WY 137, ¶ 17, 312 P.3d 76, 81 (Wyo. 2013). In this case, the issue is whether the defendant presented a fair and just reason for withdrawing his guilty plea. We review the district court's determination on that issue for an abuse of discretion. *Russell*, 2013 WY 137, ¶ 9, 312 P.3d at 78.

[¶25] We have set forth seven factors which district courts may consider when determining whether a fair and just reason exists to allow a defendant to withdraw a guilty plea:

(1) Whether the defendant has asserted his innocence; (2) whether the government would suffer prejudice; (3) whether the defendant has delayed in filing his motion; (4) whether withdrawal would substantially inconvenience the court; (5) whether close assistance of counsel was present; (6) whether the original plea was knowing and voluntary; and (7) whether the withdrawal would waste judicial resources.

*Frame*, 2001 WY 72, ¶ 7, 29 P.3d at 89; *see also Major v. State*, 2004 WY 4, ¶ 14, 83 P.3d 468, 473 (Wyo. 2004) ("Our intention in setting out the list of factors in *Frame* was to provide guidance to the trial courts in making the determination of whether a defendant has presented a fair and just reason in support of the motion to withdraw his guilty plea."). We have also stated that "the claim of ineffective assistance of counsel does constitute a fair and just reason to grant [a] motion to withdraw." *Brock v. State*, 981 P.2d 465, 469-70 (Wyo. 1999). As the United States Supreme Court has stated, "Where . . . a defendant is represented by counsel during the plea process and enters his plea upon advice of counsel, the voluntariness of the plea depends on whether counsel's advice 'was within the range of competence demanded of attorneys in criminal cases.'" *Hill v. Lockhart*, 474 U.S. 52, 56, 106 S.Ct. 366, 369, 88 L.Ed.2d 203 (1985) (quoting *McMann v. Richardson*, 397 U.S. 759, 771, 90 S.Ct. 1441, 1449, 25 L.Ed.2d 763 (1970)). In the present case, because of the exceptional circumstances of Mr. Ortega-Araiza's counsel's failure to advise him of his assured deportation, we have held that his counsel's advice was not "within the range of competence demanded of attorneys in criminal cases." As a result, there was a fair and just reason to allow Mr. Ortega-Araiza to withdraw his guilty plea. The district court abused its discretion when it denied Mr. Ortega-Araiza's motion.

## *CONCLUSION*

[¶26] We reverse the district court's denial of Mr. Ortega-Araiza's motion to withdraw his plea and remand with instructions to grant the Motion to Withdraw Guilty Plea filed by Mr. Ortega-Araiza.