# IN THE SUPREME COURT, STATE OF WYOMING

# 2015 WY 103

APRIL TERM, A.D. 2015

August 12, 2015

GRADY LEROY HODGE,

Appellant
(Defendant),

v.

THE STATE OF WYOMING,

Appellee
(Plaintiff).

S-14-0204, S-14-0205

*Appeal from the District Court of Sweetwater County*
*The Honorable Nena James, Judge*

*Representing Appellant:*
Office of the State Public Defender: Diane M. Lozano, State Public Defender; Tina N. Olson, Chief Appellate Counsel; Patricia L. Bennett, Assistant Appellate Counsel. Argument by Ms. Bennett.

*Representing Appellee:*
Peter K. Michael, Wyoming Attorney General; David L. Delicath, Deputy Attorney General; Jenny L. Craig, Senior Assistant Attorney General; Jessica Y. Frint, Assistant Attorney General. Argument by Ms. Frint.

*Before BURKE, C.J., and HILL, KITE,\* DAVIS, and FOX, JJ.*

Justice Kite retired effective August 3, 2015.

**NOTICE: This opinion is subject to formal revision before publication in Pacific Reporter Third. Readers are requested to notify the Clerk of the Supreme Court, Supreme Court Building, Cheyenne, Wyoming 82002, of any typographical or other formal errors so that correction may be made before final publication in the permanent volume.**

**FOX, Justice.**

[¶1]    Grady Leroy Hodge was convicted of two counts of first-degree sexual abuse of a minor for sexually assaulting his teenage daughter.  Prior to trial, the district court ruled certain uncharged misconduct evidence admissible, including testimony presented by an older daughter.  On appeal, Mr. Hodge argues that the district court abused its discretion by allowing the evidence.  After trial, Mr. Hodge's wife discovered some pictures that may have assisted in Mr. Hodge's defense.  Mr. Hodge's attorney moved for a new trial pursuant to W.R.Cr.P. 33(c), which the district court denied.  Mr. Hodge now alleges that his trial attorney was ineffective for not uncovering the evidence in time to be used at trial.  Finally, Mr. Hodge alleges that his due process rights were violated when his appeal was delayed due to the court reporter's untimely filing of the transcripts from the district court proceedings.  We affirm.

## *ISSUES*

[¶2]    1.    Did the district court abuse its discretion in admitting uncharged misconduct evidence at trial?

2.    Did Mr. Hodge's trial counsel provide ineffective assistance?

3.    Were Mr. Hodge's due process rights violated as a result of the court reporter's untimely filing of the transcripts from the proceedings below?

## *FACTS*

[¶3]    Mr. Hodge was convicted of two counts of sexual abuse of a minor in the first degree for sexually assaulting his teenage daughter, R.H., on two separate occasions.[1] Aside from the dates, the language included in the Information is identical for each count:

> On or between the 1st day of May, 2012, and the 31st day of August, 2012,[2] [Mr. Hodge] did, at a time when he was eighteen (18) years of age or older, inflict sexual intrusion on a victim; namely: R.H., who was less than eighteen (18) years of age, and while being the victim's legal guardian or an individual specified in W.S. 6-4-402, contrary to W.S. §6-2-314(a)(ii)--SEXUAL ABUSE OF A MINOR IN THE FIRST DEGREE[.]

---

[1] Mr. Hodge was originally charged with two counts of sexual abuse of a minor in the first degree and one count of sexual abuse of a minor in the third degree.  At trial, however, the prosecution moved forward on only the two charges of sexual abuse of a minor in the first degree.

[2] The other count of sexual abuse of a minor in the first degree charges that the sexual abuse took place between April 2012 and August 2012.

[¶4]   During discovery, Mr. Hodge filed a demand for notice of the State's intent to introduce evidence under W.R.E. 404(b).   The State complied and filed its notice outlining the evidence that it intended to introduce, including prior incidents of sexual abuse R.H. suffered at the hands of Mr. Hodge while the family was living in Texas and after they moved to Wyoming; and prior acts of sexual abuse committed by Mr. Hodge against his older daughter, C.T., which also occurred while the family was living in Texas.  The district court held a hearing and issued a lengthy decision letter allowing the State to introduce much, but not all, of the evidence outlined in its notice.

[¶5]   As part of his trial strategy, Mr. Hodge attempted to demonstrate that one of the incidents of sexual assault charged could not have occurred within the time period asserted.   This strategy revolved around a table made by Mr. Hodge and R.H.  R.H. testified that one of the charged incidents occurred while Mr. Hodge and R.H. were working on a table they were making for R.H.'s mother (Ms. Hodge) in the family's shed.   At trial, Mr. Hodge's attorney elicited testimony from various witnesses that the table had been finished before the dates of the charged conduct.  During her testimony, Ms. Hodge produced a picture of the alleged table when it was finished, which was dated prior to the charged conduct.  After the jury convicted Mr. Hodge, Ms. Hodge claims to have uncovered multiple additional pictures on the family computer demonstrating that the table had, in fact, been finished and placed in the family's home prior to the charged conduct.  Mr. Hodge moved for a new trial pursuant to W.R.Cr.P. 33(c) on the basis of the newly discovered evidence.  The district court denied the motion, finding that Mr. Hodge failed to establish each of the factors required to justify a new trial.

[¶6]   Mr. Hodge filed his first notice of appeal on October 11, 2013.  In a letter bearing the same date, Mr. Hodge's counsel requested that the court reporter prepare and file the transcripts for "all proceedings that you may have reported in this matter."  At the time Mr. Hodge filed his notice of appeal, his motion for a new trial was still pending in the district court.  Upon denial of his motion for a new trial, Mr. Hodge filed another notice of appeal on December 13, 2013, and a certification concerning the transcript on December 18, 2013.  The court reporter filed three requests for an extension of time to file the transcripts—the first two requested ninety-day extensions and the third requested a thirty-day extension.  The district court granted all three extensions.  On August 7, 2014, the court reporter filed a notice stating that all of the transcripts had been filed.

[¶7]   On appeal, Mr. Hodge argues that the district court abused its discretion by allowing the uncharged misconduct evidence to be presented to the jury.  He also argues that he received ineffective assistance of counsel due to his trial attorney's failure to uncover the pictures in time to be used at trial, and that his due process rights were violated by the court reporter's delay in filing the transcripts for the appeal.

2

## DISCUSSION

### I. *Did the district court abuse its discretion in admitting uncharged misconduct evidence at trial?*

[¶8]   We review challenges to the admission of evidence for an abuse of discretion when an objection has been lodged. *Cardenas v. State*, 2014 WY 92, ¶ 7, 330 P.3d 808, 810 (Wyo. 2014).  "[W]here a defendant files a pretrial demand for notice of intent to introduce evidence under W.R.E. 404(b), the same shall be treated as the making of a timely objection to the introduction of the evidence." *Howard v. State*, 2002 WY 40, ¶ 23, 42 P.3d 483, 491 (Wyo. 2002).  Mr. Hodge filed a demand prior to trial.  We therefore review the district court's decision to admit the uncharged misconduct evidence for an abuse of discretion.  A trial court's ruling on the admissibility of uncharged misconduct evidence is entitled to considerable deference, "'and, as long as there exists a legitimate basis for the trial court's ruling, that ruling will not be disturbed on appeal.'" *Cardenas*, 2014 WY 92, ¶ 7, 330 P.3d at 810 (quoting *Gonzalez-Ochoa v. State*, 2014 WY 14, ¶ 11, 317 P.3d 599, 603 (Wyo. 2014)).  "A trial court abuses its discretion when it could not have reasonably concluded as it did." *Bromley v. State*, 2007 WY 20, ¶ 8, 150 P.3d 1202, 1206-07 (Wyo. 2007).  "Even if a district court abused its discretion in admitting uncharged misconduct evidence, we must also determine whether the error was prejudicial." *Mersereau v. State*, 2012 WY 125, ¶ 17, 286 P.3d 97, 106 (Wyo. 2012).  "'Error is prejudicial if there is a reasonably possibility that the verdict might have been more favorable to the defendant if the error had not been made.'" *Id.* (quoting *Vigil v. State*, 2010 WY 15, ¶ 11, 224 P.3d 31, 36 (Wyo. 2010)).

[¶9]   W.R.E. 404(b) provides, in pertinent part:

> Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith.  It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident[.]

This Court has established a "mandatory procedure" for testing the admissibility of uncharged misconduct evidence pursuant to W.R.E. 404(b):

> 1) [T]he evidence is offered for a proper purpose; 2) the evidence is relevant; 3) the probative value of the evidence is not substantially outweighed by its potential for unfair prejudice; and 4) upon request, the trial court instructs the jury that the similar acts evidence is to be considered only for the proper purpose for which it was admitted.

*Vigil v. State*, 926 P.2d 351, 357 (Wyo. 1996), *as modified by Howard v. State*, 2002 WY 40, ¶¶ 22-23, 42 P.3d 483, 490-91 (Wyo. 2002). Mr. Hodge only argues on appeal that the district court abused its discretion when it determined that the probative value of the uncharged misconduct evidence was substantially outweighed by its potential for unfair prejudice. In *Gleason v. State*, 2002 WY 161, 57 P.3d 332 (Wyo. 2002), we further refined our *Vigil* test and required trial courts to consider specific factors when balancing probative value versus unfair prejudice.

> In determining the probative value of prior bad acts evidence, the trial court should consider the following factors:
>
> 1. How clear is it that the defendant committed the prior bad act?
>
> 2. Does the defendant dispute the issue on which the state is offering the prior bad acts evidence?
>
> 3. Is other evidence available?
>
> 4. Is the evidence unnecessarily cumulative?
>
> 5. How much time has elapsed between the charged crime and the prior bad act?
>
> . . . The trial court should weigh these additional factors against the probative value of the evidence:
>
> 1. The reprehensible nature of the prior bad act. The more reprehensible the act, the more likely the jury will be tempted to punish the defendant for the prior act.
>
> 2. The sympathetic character of the alleged victim of the prior bad act. Again, the jury will be tempted to punish the defendant for the prior act if the victim was especially vulnerable.
>
> 3. The similarity between the charged crime and the prior bad act. The more similar the acts, the greater is the likelihood that the jury will draw the improper inference that if the defendant did it once, he probably did it again.

4. The comparative enormity of the charged crime and the prior bad act. When the prior act is a more serious offense than the charged crime, the introduction of that act will tend to place the defendant in a different and unfavorable light.

5. The comparable relevance of the prior bad act to the proper and forbidden inferences. Evidence of the prior bad act may be much more probative of bad character than it is of any legitimate inference permitted by Rule 404(b).

6. Whether the prior act resulted in a conviction. The jury may be tempted to punish the defendant if they believe he escaped punishment for the prior bad act.

*Id*. at ¶ 27, 57 P.3d at 342-43. While trial courts are not required to make express findings on each factor, they must provide an adequate record for this Court to review. *Id.* at ¶ 28, 57 P.3d at 343.

[¶10] In this case, the district court did make express findings on each *Gleason* factor and determined that the probative value of the uncharged misconduct evidence was not substantially outweighed by its potential for unfair prejudice. The district court found that the prior bad acts were no more serious or reprehensible than the charged acts; that the victims' statuses as minors made them sympathetic, but because one of the victims of the uncharged acts, R.H., was the same person as the victim in the charged acts, the jury would not be tempted to punish Mr. Hodge for the uncharged misconduct;[3] and that the evidence was more probative of motive, intent, and course of conduct than it was of "bad character and illegitimate inferences." The district court did not abuse its discretion by concluding as it did. We affirmed the same court when it provided a similar analysis in *Huckfeldt v. State*, 2013 WY 29, ¶¶ 22-25, 297 P.3d 97, 103-04 (Wyo. 2013). The district court executed the required analysis, and while we may have come to a different conclusion concerning whether the probative value was substantially outweighed by the prejudicial effect, we cannot say that the district court's determination was unreasonable or an abuse of discretion.

**II.    *Did Mr. Hodge's trial counsel provide ineffective assistance?***

[¶11] "'Claims of ineffective assistance of counsel involve mixed questions of law and fact[.]' *Osborne v. State*, 2012 WY 123, ¶ 17, 285 P.3d 248, 252 (Wyo. 2012). We

---

[3] *See Heywood v. State*, 2009 WY 70, ¶ 12, 208 P.3d 71, 74 (Wyo. 2009) (finding that because the victim of the uncharged acts was the same person as the victim in the charged acts, she was no more sympathetic).

review such claims *de novo*." *Ortega-Araiza v. State*, 2014 WY 99, ¶ 5, 331 P.3d 1189, 1193 (Wyo. 2014).

[¶12]   To determine whether a defendant has received effective assistance of counsel, we employ a two-prong test. *Frias v. State*, 722 P.2d 135, 145 (Wyo. 1986).  The burden is on the defendant to establish, first, that counsel's performance was deficient, and second, that the defendant was prejudiced as a result of the deficient performance. *Id.*; *Ortega-Araiza*, 2014 WY 99, ¶ 6, 331 P.3d at 1193.

[¶13]   Mr. Hodge argues that he received ineffective assistance of counsel when his trial attorney failed to uncover photographs stored on Mr. and Ms. Hodge's home computer that may have assisted in his defense.  In his affidavit requesting that this Court remand the case for further fact-finding pursuant to W.R.A.P. 21, Mr. Hodge stated:

> My attorney did not obtain the pictures['] metadata showing the dates the table was finished, which proved I could not have been in the shed with my daughter when she said I was. He did not have this evidence available until after trial when my wife brought it to him.  The information could have easily [been] obtained by the investigator.

In *Frias*, we relied on the United States Supreme Court's decision in *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), to determine whether an attorney's investigation was adequate.

> "* * * [S]trategic choices made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation.  In other words, *counsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary.* * * *
>
> The reasonableness of counsel's actions may be determined or substantially influenced by the defendant's own statements or actions.  Counsel's actions are usually based, quite properly, on informed strategic choices made by the defendant and on information supplied by the defendant. * * * [W]hat investigation decisions are reasonable depends critically on such information."

722 P.2d at 145 (quoting *Strickland*, 466 U.S. at 690-91, 104 S.Ct. at 2066).

6

[¶14] It is true that the photographs likely could have been easily uncovered by the investigator or trial counsel himself had either been aware they existed. However, there is nothing in the record to indicate that either trial counsel or the investigator knew that the Hodges had these pictures in their possession. In fact, at the hearing on Mr. Hodge's motion for a new trial, Ms. Hodge testified that she had only become aware of the photographs while looking through her computer after the verdict was delivered. Trial counsel's failure to explore the Hodges' home computer for pictures of the table was not unreasonable considering the record does not indicate he was informed that such photographs existed. Mr. Hodge was aware that the date range charged in one of the counts was at issue, and he had every opportunity to scour his computer for pictures of the table or, at the very least, inform his attorney that such pictures may exist. The record does not indicate that he did either of these things. "When a client has failed to apprise his counsel of information crucial to his defense, we decline to find counsel's failure to act upon such undisclosed information a basis for a new trial on the grounds of ineffective assistance of counsel." *United States v. Marcano-Garcia*, 622 F.2d 12, 18 (1st Cir. 1980).

[¶15] Even if we were to determine that Mr. Hodge's trial counsel acted deficiently, Mr. Hodge has failed to demonstrate that he was prejudiced by the allegedly deficient performance. *Frias*, 722 P.2d at 145. Mr. Hodge asserts only that he "was prejudiced, as he was precluded from introducing evidence crucial to his defense on one count." Mr. Hodge has not met his burden of demonstrating that the outcome of the trial would have been different had the evidence been introduced at trial. *Frias*, 722 P.2d at 146. A photograph of the finished table was introduced to the jury at trial, along with testimony from Ms. Hodge explaining the date the photograph was taken as well as its placement. If one picture was insufficient to convince the jury of Mr. Hodge's innocence, it is unlikely that many pictures of the same table would do so. We find that Mr. Hodge's trial attorney effectively defended him.

### III. Were Mr. Hodge's due process rights violated as a result of the court reporter's untimely filing of the transcripts?

[¶16] Mr. Hodge argues that the untimely filing of the transcripts inordinately delayed his appeal and deprived him of his due process rights.

> [C]ourts have recognized that an appeal that is inordinately delayed is as much a "meaningless ritual" as an appeal that is adjudicated without the benefit of effective counsel or a transcript of the trial court proceeding. Among the circumstances that can lead to a deprivation of due process are excessive delays in furnishing transcripts to be used on appeal.

*Daniel v. State*, 2003 WY 132, ¶ 44, 78 P.3d 205, 219 (Wyo. 2003) (citations omitted). To determine whether a delay rises to the level of a due process violation, we have adopted a modified version of the test set forth in *Barker v. Wingo*, 407 U.S. 514, 530, 92 S.Ct. 2182, 2192, 33 L.Ed.2d 101 (1972). *Daniel*, 2003 WY 132, ¶ 43, 78 P.3d at 218. The four-part test considers "the length of the delay, the reason for the delay, the defendant's diligence in pursuing the right to appeal, and the prejudice to the defendant." *Id.*

[¶17] "The first factor in the balancing test is the length of the appellate delay. 'Only passage of an *inordinate* amount of time triggers due process concern[s].' Therefore, if a petitioner cannot establish at least some degree of inordinate delay, the court need not inquire into the other factors." *Harris v. Champion*, 15 F.3d 1538, 1559-60 (10th Cir. 1994) (citations omitted). While we are not inclined to set forth an inflexible length of time that constitutes inordinate delay, it seems appropriate to judge appellate delay by the same presumptive standard we utilize in our speedy trial jurisprudence. *Id.* at 1560. We have held that some protracted delays are presumptively inordinate or unreasonable. *Boucher v. State*, 2011 WY 2, ¶ 11, 245 P.3d 342, 349 (Wyo. 2011) (2,971 days); *Strandlien v. State*, 2007 WY 66, ¶ 9, 156 P.3d 986, 990 (Wyo. 2007) (762 days); *Berry v. State*, 2004 WY 81, ¶ 34, 93 P.3d 222, 232 (Wyo. 2004) (720 days). Other delays, however, are not long enough to mandate the presumption, but may still require further analysis. *Potter v. State*, 2007 WY 83, ¶ 35, 158 P.3d 656, 665 (Wyo. 2007) (delay of 362 days warrants examination of other *Barker* factors); *Whitney v. State*, 2004 WY 118, ¶ 40, 99 P.3d 457, 471 (Wyo. 2004) (delay of 374 days sufficient to trigger further analysis); *Osborne v. State*, 806 P.2d 272, 277 (Wyo. 1991) (delay of 244 days was significant enough to trigger further analysis). In this case, we find that the delay was not significant enough to trigger due process concerns, and we therefore refrain from engaging in an analysis of the remaining *Barker* factors.

[¶18] Mr. Hodge filed his first notice of appeal on October 11, 2013, along with a certification concerning the transcript. However, just prior to filing his notice of appeal, Mr. Hodge filed a motion for a new trial pursuant to W.R.Cr.P. 33(c). The version of W.R.A.P. 2.04[4] in effect at the time provided: "A notice of appeal filed prematurely shall be treated as though filed on the same day as entry of the appealable order[.]" *See also* W.R.A.P. 2.03. At the time he filed his first notice of appeal, Mr. Hodge's motion for a new trial was still pending in district court. Thus, his notice of appeal was premature. *Downs v. State*, 581 P.2d 610, 612 (Wyo. 1978). We must therefore consider the date of the district court's order denying Mr. Hodge's motion for a new trial, December 11, 2013.[5] Pursuant to W.R.A.P. 2.06, the court reporter was required to file the transcript within sixty days of the date Mr. Hodge's notice of appeal became effective. The

---

[4] W.R.A.P. 2.04 has been amended effective July 1, 2015.
[5] Mr. Hodge filed his second notice of appeal and certification of transcript on December 13, 2013 and December 18, 2013, respectively.

transcript should have been filed by February 9, 2014.  The transcript was filed 179 days after the required deadline on August 7, 2014.  While we do not condone and, indeed, are disturbed by the court reporter's unwillingness or inability to comply with our appellate rules,[6] a delay of 179 days to process an appeal is not significant enough to implicate due process.  *See Walters v. State*, 2004 WY 37, ¶ 11, 87 P.3d 793, 795 (Wyo. 2004) (finding a delay of 235 days not significantly long); *Taylor v. State*, 2001 WY 13, ¶ 6, 17 P.3d 715, 718 (Wyo. 2001) (finding a delay of 236 days not presumptively prejudicial or significantly long).

## *CONCLUSION*

[¶19] We find that the district court did not abuse its discretion in admitting the uncharged misconduct evidence; Mr. Hodge had effective assistance of counsel at the trial level; and Mr. Hodge did not suffer a denial of due process as a result of the untimely filing of the transcripts for his appeal.  Affirmed.

---

[6] The court reporter did file three requests for extensions of time, which the district court granted. However, at the time, our rules of appellate procedure did not allow a district court to grant extensions to court reporters.  We have since amended our rules and now allow a court reporter to obtain an extension under certain circumstances.  W.R.A.P. 2.06(b), effective July 1, 2015.