2018 WY 9

**Mark Alan GARRISON, Appellant (Defendant),**

v.

**The STATE of Wyoming, Appellee (Plaintiff).**

S-17-0130

Supreme Court of Wyoming.

February 2, 2018

Representing Appellant: Office of the
State Public Defender: Diane M. Lozano,
State Public Defender; Tina N. Olson, Chief
Appellate Counsel; Eric M. Alden, Senior

Assistant Appellate Counsel; Kirk A. Morgan *, Senior Assistant Appellate Counsel.

Representing Appellee: Peter K. Michael, Wyoming Attorney General; David L. Delicath, Deputy Attorney General; Christyne M. Martens, Senior Assistant Attorney General; James M. Causey, Senior Assistant Attorney General.

Before BURKE, C.J., and HILL, DAVIS, FOX, and KAUTZ, JJ.

FOX, Justice.

[¶1] A jury convicted Mark Alan Garrison on a charge of first-degree arson for setting fire to his estranged wife's trailer home. Mr. Garrison alleges that the trial court abused its discretion when it admitted evidence of other acts, in violation of W.R.E. 404(b). We affirm.

### ISSUE

[¶2] Mr. Garrison presents one issue, which we break into two components:

1. Was it plain error when the district court conducted its 404(b) *Gleason* analysis after the disputed 404(b) evidence had been admitted and after the close of evidence at trial?

2. Did the district court abuse its discretion when it admitted evidence of other acts at trial?

### FACTS

[¶3] With money she inherited from her mother, Ms. Hendricks purchased a mobile home, furnished the mobile home and bought a 2001 Chevrolet Silverado pickup, a 1999 Dodge Ram pickup, and a 1974 Reinell boat. Shortly thereafter, in early 2011, Ms. Hendricks and Mr. Garrison married. By the fall of 2013, and after a series of violent episodes, the couple had become estranged. In November 2013, Ms. Hendricks obtained a protection order which granted her the use of the trailer home, granted Mr. Garrison the use of the 1999 Dodge Ram, and prohibited Mr. Garrison from contacting Ms. Hendricks.

[¶4] During a snowstorm on the evening of December 20, 2013, Ms. Hendricks' mobile home was consumed by fire. That evening she had gone to pick up her nephew from work; her cat and Mr. Garrison's bird were inside the home; and a dog was tethered to the front porch. Paula Houlberg, Ms. Hendricks' neighbor, testified that she saw the fire in its early stages on the front porch of the home and that it spread "like something had been poured ... following a trail" to the front door and then to other parts of the home. It was later determined that gasoline appeared to have been poured on the porch and inside the front door of the trailer. The fire investigator eliminated other potential sources for the fire and concluded that gasoline inside the front door was likely the origin of the fire. A video from the Houlbergs' security camera revealed that shortly before the fire, a late 1990's Dodge Ram truck drove by, a man walked toward the mobile home; later, the same man ran away from the home with the dog, and a glow from the fire reflected on a nearby camper and window.

[¶5] Mr. Garrison's friend testified that he had loaned Mr. Garrison his gas can a couple of days prior to the fire, and that on the day of the fire it was in the back of Mr. Garrison's truck with about an inch of gas in it. He testified that when Mr. Garrison returned to his friend's house the next day, the gas can did not have as much gas in it and was "pretty close" to empty.

[¶6] Mr. Garrison was charged with one count of first-degree arson, in violation of Wyo. Stat. Ann. 6-3-101(a) and (b)(i). Later, the State amended the charge to reflect an enhanced penalty due to prior convictions.

[¶7] Prior to trial, Mr. Garrison sought notice of the State's intent to use 404(b) evidence. The State filed its notice of intent to offer evidence pursuant to W.R.E. 404(b), identifying other acts it contended were admissible under the rule. The proposed evidence consisted of ten separate incidents:

1. On October 30, 2013, Mr. Garrison went to Ms. Hendricks' workplace, threatened to destroy her belongings, and took her truck.

* An Entry of Appearance was filed on December 21, 2017.

2. At the November 8, 2013 circuit court hearing on the protection order, on his way out of the courtroom, Mr. Garrison pointed at Ms. Hendricks and said, "you're mine" and threatened to "[k]ick [her nephew's] ass."

3. Prior to the fire, Mr. Garrison used a golf club to destroy knickknacks, and to strike the dog. He shattered Ms. Hendricks' glass coffee table, covering her with shards of glass.

4. On several occasions in November of 2013, Mr. Garrison moved a dresser in front of the bedroom door, preventing Ms. Hendricks' exit.

5. During the summer of 2013, Mr. Garrison forced Ms. Hendricks to the floor of the truck he was driving, hit her in the head, yelled at her, and refused to let her return to the passenger seat for over 45 minutes.

6. After the protective order was in place and shortly before the fire, Mr. Garrison entered Ms. Hendricks' home and sexually assaulted her.

7. On December 9, 2013, Mr. Garrison repeatedly called Ms. Hendricks from several local stores, in violation of the protective order. (Mr. Garrison pled guilty to this violation of the protective order.)

8. On January 29, 2014, Mr. Garrison called Ms. Hendricks multiple times and threatened to harm her and a friend she was visiting, in violation of the protective order. (Mr. Garrison pled guilty to this violation of the protective order.)

9. On February 2, 2014, Mr. Garrison again made numerous phone calls to Ms. Hendricks, leaving seven voice mails. (Mr. Garrison pled guilty to this violation of the protective order.)

10. On March 2, 2014, Mr. Garrison called Ms. Hendricks over 128 times, and threatened to harm her; he called her son and threatened him as well. (Mr. Garrison also pled guilty to these violations of the protective order.)

The defense filed its response, and prior to trial, the district court conducted a hearing on the admissibility of these instances of misconduct. At the conclusion of the hearing, the district court provided a "framework" for its ruling. The court announced that incidents 4 and 6 were inadmissible, as were portions of incidents 3 (the portion relating to hitting the dog with the golf club), 5 (Mr. Garrison's possession of a knife), and 10 (threats against Ms. Hendricks' son). The court stated that the other instances were admissible to "demonstrate the relationship of the parties" and for "intent, malice, identity, and motive." The court added that it would provide a more detailed analysis if the case went to trial.

[¶8] In his opening statement at trial, defense counsel stated that Ms. Hendricks had accused Mr. Garrison of many horrible things, including rape and locking her in her bedroom (identified as incidents 4 and 6, above, which had previously been excluded). When the court questioned counsel about opening the door to previously excluded other acts evidence, counsel indicated that his strategy was to show that Ms. Hendricks was exaggerating. Because of the new strategy, defense counsel agreed that the State could pursue questioning on the two previously excluded incidents. After the close of evidence, the court placed a more detailed 404(b) ruling on the record (the *Gleason* analysis). No limiting instruction on the 404(b) evidence was requested or provided to the jury.

[¶9] The jury convicted Mr. Garrison of one count of first-degree arson for setting his wife's mobile home on fire. Mr. Garrison timely appeals, arguing that the district court abused its discretion by allowing the uncharged misconduct evidence to be presented to the jury and by reserving its *Gleason* analysis until after all the evidence had been admitted at trial.

### DISCUSSION

[¶10] Mr. Garrison contends that the district court improperly announced its findings as to the 404(b) evidence after the conclusion of trial. He also argues that the district court abused its discretion when it admitted evidence of the other acts. We address both arguments below.

## I. Was it plain error when the district court conducted its 404(b) Gleason analysis after the disputed 404(b) evidence had been admitted and after the close of evidence at trial?

[¶11] W.R.E. 404(b) provides:

(b) *Other crimes, wrongs, or acts.*—Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.

In *Gleason*, we set forth factors that the district court must examine to determine the admissibility of 404(b) evidence, and we required the court to articulate its findings. *Gleason v. State*, 2002 WY 161, ¶ 30, 57 P.3d 332, 343 (Wyo. 2002).[1]

[¶12] Although Mr. Garrison's pretrial demand for notice of the State's intent to introduce other acts evidence under W.R.E. 404(b) is treated as a timely objection to the introduction of the evidence, it will not preserve an objection regarding the timing of the *Gleason* analysis. *Hodge v. State*, 2015 WY 103, ¶ 8, 355 P.3d 368, 371 (Wyo. 2015); *Vigil v. State*, 2010 WY 15, ¶ 9, 224 P.3d 31, 35 (Wyo. 2010). In *Vigil*, the appellant challenged the timing of the 404(b) hearing, but had not raised the issue in the trial court. *Id.* We held that because no objection had been made below, the issue was subject to plain error review on appeal. *Id.* Likewise, Mr. Garrison did not object to the timing of the trial court's *Gleason* analysis during trial. Accordingly, we review for plain error. *Id.*

[¶13] To establish plain error, Mr. Garrison must show that the record clearly reflects the alleged error, the error transgressed a clear and unequivocal rule of law, and the transgression adversely affected a substantial right which materially prejudiced him. *Griggs v. State*, 2016 WY 16, ¶ 81, 367

---

1. We set forth the factors the district court should evaluate in its exercise of its discretion in admitting uncharged misconduct evidence under Rule 404(b):

For proper appellate review of the admissibility of evidence under W.R.E. 404(b), the record must reflect that the trial court required the State not only to identify the proper purpose for which uncharged misconduct evidence is being offered, but also to explain how or why it is probative, and why it is more probative than prejudicial....

In determining the probative value of prior bad acts evidence, the trial court should consider the following factors:
1. How clear is it that the defendant committed the prior bad act?
2. Does the defendant dispute the issue on which the state is offering the prior bad acts evidence?
3. Is other evidence available?
4. Is the evidence unnecessarily cumulative?
5. How much time has elapsed between the charged crime and the prior bad act?

Evidence is unfairly prejudicial if it tempts the jury to decide the case on an improper basis. In balancing against its probative value the unfair prejudice created by the evidence, the trial court should consider the extent to which the evidence distracts the jury from the central question whether the defendant committed the charged crime. The trial court should weigh these additional factors against the probative value of the evidence:

1. The reprehensible nature of the prior bad act. The more reprehensible the act, the more likely the jury will be tempted to punish the defendant for the prior act.
2. The sympathetic character of the alleged victim of the prior bad act. Again, the jury will be tempted to punish the defendant for the prior act if the victim was especially vulnerable.
3. The similarity between the charged crime and the prior bad act. The more similar the acts, the greater is the likelihood that the jury will draw the improper inference that if the defendant did it once, he probably did it again.
4. The comparative enormity of the charged crime and the prior bad act. When the prior act is a more serious offense than the charged crime, the introduction of that act will tend to place the defendant in a different and unfavorable light.
5. The comparable relevance of the prior bad act to the proper and forbidden inferences. Evidence of the prior bad act may be much more probative of bad character than it is of any legitimate inference permitted by Rule 404(b).
6. Whether the prior act resulted in a conviction. The jury may be tempted to punish the defendant if they believe he escaped punishment for the prior bad act.

*Rigler [v. State]*, 941 P.2d [734,] 737 n.1 [(Wyo. 1997)] (*citing Dean [v. State]*, 865 P.2d [601,] 609-10 n.2 [(Wyo. 1993)]).

*Gleason*, 2002 WY 161, ¶ 27, 57 P.3d at 342-43.

P.3d 1108, 1132-33 (Wyo. 2016); *Vigil*, 2010 WY 15, ¶ 9, 224 P.3d at 35.

[¶14] The record clearly reflects the alleged error: at the 404(b) hearing prior to trial, the district court announced its decision on the admissibility of the evidence that the prosecution had proposed, ruling that some incidents and parts of incidents would be inadmissible, while others would be admitted. The court prefaced its decision with the following:

> I feel on one hand compelled to give you kind of a framework of what I feel is admissible and not admissible at this time so you can prepare accordingly. I'm not going to give an entire factor-by-factor, detailed ruling today. If the case goes to trial, I would put all that on the record factor by factor as far as how I reached these conclusions.

It was not until after the close of evidence at trial, and during the jury instruction conference, that the district court provided additional comments regarding admission of the uncharged misconduct evidence, touching upon many of the factors set forth in *Gleason* for the analysis of 404(b) evidence. *See Gleason*, 2002 WY 161, ¶ 27, 57 P.3d at 342-43.

[¶15] Mr. Garrison falls short of establishing his burden regarding the prong of the plain error analysis which requires that the error transgress a clear and unequivocal rule of law. Mr. Garrison argues that the district court did not comply with the procedure mandated by *Gleason*, which he contends "anticipates a record made roughly contemporaneous with the decision on the 404(b) evidence." In *Gleason*, we provided specific guidance to trial courts regarding the analysis of the admissibility of uncharged misconduct, and we described what is required of the proponent of the evidence and the trial court so that we have a record that enables meaningful review. *Gleason*, 2002 WY 161, ¶ 30, 57 P.3d at 343. However, in *Gleason*, we did not indicate when these findings ought to be made by the trial court. We did express "a firm preference for the ***pretrial*** determination of issues concerning uncharged misconduct." *Id.* at ¶ 18 n.2, 57 P.3d at 340 n.2 (emphasis in original). "[P]retrial determination enhance[s] the defendant's

prospects of receiving due process and a fair trial, it will also enhance the district court's ability to reflect and rule upon a significant evidentiary issue." *Vigil*, 2010 WY 15, ¶ 10, 224 P.3d at 35.

[¶16] In two instances, we have considered whether holding the 404(b) hearing during trial, after jury selection, but prior to opening statements was reversible error. *See Vigil*, 2010 WY 15, ¶ 10, 224 P.3d at 36; *Heywood v. State*, 2009 WY 70, ¶ 13, 208 P.3d 71, 74 (Wyo. 2009). In both instances, we concluded that because the defendants failed to demonstrate prejudice due to the timing of the hearing, they failed to establish plain error. *Vigil*, ¶ 10, 224 P.3d at 36; *Heywood*, ¶ 13, 208 P.3d at 74. In *Vigil*, we reiterated our "firm preference for the ***pretrial*** determination of issues concerning uncharged misconduct." *Vigil*, ¶ 10, 224 P.3d at 35. We reassert the "firm preference" for the pretrial determination of the admissibility of 404(b) evidence. We cannot conclude, however, that a "firm preference" for pretrial determination of issues amounts to an unequivocal rule of law requiring the *Gleason* analysis to be conducted prior to the admission of the evidence. Therefore, Mr. Garrison has failed to satisfy his burden of establishing plain error.

[¶17] Notwithstanding our resolution of the issue, the procedure set forth in *Gleason* and its progeny suggests that the only rational time for the trial court to conduct the "mandatory procedure for testing" the admissibility of evidence under Rule 404(b) is before it issues its ruling on the admissibility of the evidence and before any 404(b) evidence is admitted at trial. *Williams v. State*, 2004 WY 117, ¶ 13, 99 P.3d 432, 440 (Wyo. 2004); *see also United States v. Lopez*, 635 Fed.Appx. 49, 53 (3rd Cir. 2015) ("The reasoning must come before, not after, the decision to admit the evidence."); *Rule 404. Character Evidence Not Admissible to Prove Conduct, Exceptions; Other Crimes*, Unif. Rules of Evidence 99 Rule 404, Article IV. Relevancy and Its Limits, ULA R. Ev. Rule 404, cmt. (2017) ("The procedural provisions would then have to be satisfied before evidence could be admitted...."). Without engaging in the analysis and applying the various relevant *Gleason*

factors to the evidence at issue, a court cannot properly determine whether 404(b) evidence is admissible.

> Trial judges are charged with the duty to draw the line amidst the subtle and even "paradoxical" distinctions between admissible and inadmissible other acts evidence. It is reasonable. to believe that this takes time and careful consideration. As Chief Justice Hill stated in *Howard* [*v. State*, 2002 WY 40, ¶ 23, 42 P.3d 483, 491 (Wyo. 2002) ], "Rulings on uncharged misconduct evidence are too important to be made in the heat and pressure of a trial, with the jury twiddling its thumbs in the next room." A trial judge is more likely to err in drawing the line if surprised by the evidence and required to rule on the spur of the moment. Having an effective pretrial notice requirement allows a trial judge to be more informed and more meticulous in analyzing admissibility.

Robert S. Hitchcock, Note, *Evidence—Pretrial Discovery of Uncharged Misconduct Evidence—No More Pulling the Uncharged Misconduct Card from the Sleeve. Howard v. State, 42 P.3d 483 (Wyo. 2002)*, 3 Wyo. L. Rev. 797, 809 (2003).

▪ [¶18] An after-the-fact application of the factors to evidence that has already been admitted to trial is not helpful or meaningful. The court is unlikely to find evidence anything other than admissible once it has already been admitted and the trial has concluded. Moreover, the potential necessity of a limiting instruction requires an articulated rationale for the admission of 404(b) evidence. *See e.g.*, *Vigil*, 2010 WY 15, ¶ 22, 224 P.3d at 39 (court gave oral limiting instruction regarding prior conviction of defendant immediately after the evidence was admitted); *Gleason*, 2002 WY 161, ¶ 20, 57 P.3d at 341 (recognizing that the trial court gave "an appropriate instruction, limiting the jury's consideration of the uncharged misconduct evidence to the proper purposes for which it had been offered"). To ensure there is no doubt in the future as to the timing of the *Gleason* analysis, while maintaining our pref-erence for a pretrial determination, we hold that, at a minimum, the *Gleason* analysis must be made contemporaneously with the ruling on admissibility and prior to the admission of any 404(b) evidence.[2]

## II. Did the district court abuse its discretion when it admitted evidence of other acts at trial?

▪ [¶19] We now turn to Mr. Garrison's contention that the district court abused its discretion when it admitted the 404(b) evidence at trial. "We review challenges to the admission of evidence for an abuse of discretion when an objection has been lodged." *Hodge*, 2015 WY 103, ¶ 8, 355 P.3d at 370-71. A pretrial demand for notice of the State's intent to introduce evidence of other acts under W.R.E. 404(b) is treated as the making of a timely objection to the introduction of the evidence. *Id.* at ¶ 8, 355 P.3d at 371; *Howard*, 2002 WY 40, ¶ 23, 42 P.3d at 491. Because Mr. Garrison filed a demand prior to trial, we will review the district court's decision to admit the other acts evidence for an abuse of discretion.

▪ [¶20] "Our task in reviewing a district court's decision on the admissibility of uncharged misconduct evidence is to determine whether the district court abused its discretion, not to apply the *Gleason/Vigil* test anew." *Rolle v. State*, 2010 WY 100, ¶ 17, 236 P.3d 259, 269 (Wyo. 2010), *overruled in part on other grounds by Johnson v. State*, 2015 WY 118, 356 P.3d 767 (Wyo. 2015) (citing *Gleason*, 2002 WY 161, ¶ 18, 57 P.3d at 340 ("We do not apply this test on appeal; rather, it is intended to be conducted by the trial court.")). Under an abuse of discretion standard, we give the trial court's ruling considerable deference and if "there exists a legitimate basis for the trial court's ruling, that ruling will not be disturbed on appeal." *Hodge*, 2015 WY 103, ¶ 8, 355 P.3d at 371 (internal quotation marks omitted). However, if the trial court could not have reasonably concluded as it did, we will find an abuse of discretion. *Bromley v. State*, 2007 WY 20, ¶ 8, 150 P.3d 1202, 1206-07 (Wyo. 2007). "In

**2.** We recognize that, at times, the trial court can only make a conditional 404(b) ruling pretrial, and must make a final ruling during trial after determining other evidentiary matters such as foundation.

this context, 'reasonably' means sound judgment exercised with regard to what is right under the circumstances and without being arbitrary or capricious." *Id.*

[¶21] At the pretrial hearing on the admissibility of 404(b) evidence, the district court ruled that the fourth and sixth incidents and portions of the third (relating to injury to the dog), fifth (Mr. Garrison's possession of a knife during the drive to Pathfinder Reservoir), and tenth (relating to Mr. Garrison's threats to Ms. Hendricks' son) incidents would be inadmissible. The court concluded that the remainder of the State's proposed evidence "would be relevant and admissible for purposes other than those prohibited by Rule 404(b), including to demonstrate the relationship between the parties" and "it also relates to other proper purposes, including intent, malice, identity, and motive."

[¶22] After the close of evidence at trial, and during the jury instruction conference, the district court provided additional comments regarding admission of the uncharged misconduct evidence, touching upon many of the factors set forth in *Gleason* for the analysis of 404(b) evidence. *See Gleason*, 2002 WY 161, ¶ 27, 57 P.3d at 342-43. The court discussed whether other evidence was available; whether the evidence at issue was cumulative; the time that had elapsed between the arson and the other acts; whether the other acts were more reprehensible than the current charge; the identity of the victim of the current charge and the other acts; the likelihood that the jury would be tempted to punish the defendant for the other acts; and the similarity of the other acts to the charged crime. Finally, the court concluded that to the extent the evidence was admissible, it was "very probative of the proper purposes identified by the State and . . . not substantially outweighed by the danger of unfair prejudice or other concerns listed in Rule 403."

[¶23] The other acts evidence can be broken down into three distinct categories: evidence that was originally excluded, but then admitted by the district court based upon defense counsel's opening statement; evidence of acts that occurred prior to the fire; and evidence of telephone calls occurring after the fire. While it is unclear from his argument whether Mr. Garrison contends that all three categories or some subset of those categories were improperly admitted, we will examine each category.

[¶24] The district court originally found inadmissible the proposed evidence regarding Mr. Garrison's barricading Ms. Hendricks' bedroom door, trapping her inside (incident number 4), and the alleged sexual assault (incident number 6). *See supra* ¶ 7. However, defense counsel conceded that once he raised those items to "show exaggeration" on Ms. Hendricks' part, the State could properly discuss those matters. Accordingly, incidents 4 and 6 were properly admitted, not as 404(b) evidence, but because they were offered by defense counsel as part of his strategy regarding Ms. Hendricks' alleged propensity to exaggerate. *See Lawrence v. State*, 2007 WY 183, ¶ 14, 171 P.3d 517, 521-22 (Wyo. 2007) (once defense counsel "opened the door" prosecution could pursue otherwise inadmissible line of questioning).

[¶25] We now turn to the remaining two categories of 404(b) evidence. Mr. Garrison argues that this evidence was not admissible because "purposes listed by the court exceeded those legitimately allowed" under Rule 404(b). The State claims that the evidence was properly admitted. In its abbreviated ruling at the *Gleason* hearing prior to trial, the district court identified what it considered proper purposes under Rule 404(b) for the admission of this evidence: the relationship between the parties to illustrate that "this did not allegedly occur in a vacuum"; and "other proper purposes, including intent, malice, identity and motive." During its post-trial *Gleason* analysis, the court again identified the "proper purposes" of "intent, malice, identity, motive, and the nature of the relationship between the alleged victim and the defendant prior to and after the fire" for the admission of the 404(b) evidence. The court added that because Mr. Garrison had entered a plea of not guilty, all the elements of the crime of arson were at issue, "including malice and identity"; and motive was a disputed issue as well.

[¶26] Some of the reasons given by the district court for allowing the disputed 404(b) evidence run afoul of *Gleason*, where we explained that the " 'shotgun approach' of listing every conceivable purpose for admissibility, followed by a bald statement that probative value outweighs prejudicial effect will no longer be sufficient." *Gleason*, 2002 WY 161, ¶ 30, 57 P.3d at 343. Nevertheless, independent of the laundry list of purposes, the district court identified the relationship between the parties as an additional purpose for admission of the 404(b) evidence and provided slightly more rationale for its determination that the 404(b) evidence would be admissible for that purpose during the hearing and again in its after-the-fact *Gleason* analysis.

[¶27] Mr. Garrison claims that the "relationship between the parties does not fall anywhere within those types of purposes [allowed by Rule 404(b) ] and was easily established by evidence or testimony which did not carry the risks which Rule 404 is designed to prevent." The rule's list of "other purposes" for which prior bad acts may be admitted is "non-exclusive." *Sturgis v. State*, 932 P.2d 199, 202 (Wyo. 1997). The district court's explanation that the parties' relationship was important to show how the events occurred invokes an additional proper purpose that we have recognized on numerous occasions: the course of conduct between the parties. *See, e.g., Bromley*, 2007 WY 20, ¶¶ 20-21, 150 P.3d at 1209-10; *Solis v. State*, 981 P.2d 28, 31 (Wyo. 1999); *Crozier v. State*, 723 P.2d 42, 49 (Wyo. 1986), *overruled on other grounds by Wilkerson v. State*, 2014 WY 136, 336 P.3d 1188 (Wyo. 2014). "[E]vidence of uncharged misconduct is admissible if it forms part of the history of the event or serves to enhance the natural development of the facts." *Vasquez v. State*, 2016 WY 129, ¶ 13, 386 P.3d 350, 355 (Wyo. 2016) (internal citations and quotation marks omitted). We have explained that "[e]vents do not occur in a vacuum and the jury has the right to have the offense placed in its proper setting." *Bromley*, 2007 WY 20, ¶ 21, 150 P.3d at 2109.

[¶28] Evidence of other acts that occurred prior to the fire fall squarely within "course of conduct." Evidence that Mr. Garrison went to Ms. Hendricks' workplace, threatened to destroy her belongings, and took her truck, (incident number 1); that he pointed at Ms. Hendricks and said, "you're mine" at the circuit court hearing on the protection order (incident number 2); that Mr. Garrison used a golf club to destroy knickknacks and shatter Ms. Hendricks' glass coffee table, covering her with shards of glass (incident number 3); that during a drive in the summer, Mr. Garrison forced Ms. Hendricks to the floor of the truck, hitting her and yelling at her for a prolonged period of time (incident number 5); and that he violated the protection order by phoning Ms. Hendricks on several occasions prior to the fire (incident 7) placed the alleged arson in the proper context and allowed the jury to evaluate what otherwise might have appeared to be an isolated incident.

[¶29] Mr. Garrison also claims that because the facts that he and Ms. Hendricks had separated and that she had obtained a protection order were not in dispute, the probative value of the prior conduct was "nil." We disagree. The other acts that occurred prior to the fire illustrated the strained relationship between Ms. Hendricks and Mr. Garrison, were probative of the nature of Mr. Garrison's treatment of Ms. Hendricks, and allowed the jury to place the alleged arson within the context of their relationship. *See Bhutto v. State*, 2005 WY 78, ¶¶ 23-24, 114 P.3d 1252, 1263 (Wyo. 2005) (upholding the admission of prior acts of domestic abuse to prove motive, intent, and to "help[ ] the jury understand the relationship between the parties"); *State v. Adams*, 89 So.3d 435, 441-45 (La. Ct. App. 2012) (incidents of domestic violence and threats were properly admitted to show motive and to show the proper context of the charged offenses); *see also Wilson v. State*, 14 P.3d 912, 918-19 (Wyo. 2000) (defendant's prior assaults on victim admissible to prove identity and intent); *State v. Moxley*, 6 Wash.App. 153, 491 P.2d 1326, 1329 (Wash. 1971), *overruled on other grounds by State v. Thornton*, 119 Wash.2d 578, 835 P.2d 216 (1992) (husband's threat to kill his wife was relevant to prove identity and motive in arson case). We recognize the danger that a course of conduct exception,

standing alone, could swallow· the general rule against admission of "other crimes, wrongs, or acts," and we emphasize that it must·be linked to another legitimate purpose. Here, the identity of the arsonist was in dispute, and the course of conduct served to establish both motive and identity.

[¶30] ˙Mr. Garrison also argues that the probative value of the prior misconduct evidence is outweighed by its prejudicial effect and thus its admission unfairly prejudiced him. "When appellant claims the testimony was unduly prejudicial under Rule 403, W.R.E., he must demonstrate that the evidence had little or no probative value and that it was extremely inflammatory or introduced for the purpose of inflaming the jury." *Law v. State*, 2004 WY 111, ¶ 15, 98 P.3d 181, 187 (Wyo. 2004).

> We have said that, when this Court reviews a trial court's determination to admit evidence against a W.R.E. 403 challenge, we "will˙ not overturn a trial court's determination ˙ . . . as long as a legitimate basis exists supporting the determination." *Law [v. State]*, 2004 ˙WY 111, ¶ 15, 98 P.3d [181,] 187 [ (Wyo. 2004) ]. Further, the appellant "must demonstrate ˙that the evidence had little or no probative value ˙and that it was extremely inflammatory or introduced for ˙the purpose of inflaming ˙the jury." *Id.* (quoting *Apodaca˙ v. State*, 627 P.2d 1023, 1027 (Wyo. 1981)).

*Proffit v. State*, 2008 WY 102, ¶ 16, 191 P.3d 963, 969 (Wyo. 2008).

[¶31] The State argued, both in its notice of intent to offer 404(b) evidence, and at the hearing on the matter, that the probative value of the ·404(b) evidence is not outweighed by its prejudicial effect. The trial court agreed and concluded in its post-evidence *Gleason* ruling that the evidence was "not substantially outweighed by the danger of unfair prejudice or other concerns listed in Rule 403." "Evidence is unfairly prejudicial if it tempts the jury to decide the case on an improper basis." *Rolle*, 2010 WY 100, ¶¶ 17-18, 236 P.3d at 269, *overruled on other grounds by Johnson v. State*, 2015 WY 118, 356 P.3d 767 (Wyo. 2015). We do not believe that the evidence in this case falls into this category.

[¶32] In *Coleman v. Smith*, the defendant was charged with felony destruction of property for slashing his wife's tires. 741 P.2d 99, 100-01 (Wyo. 1987). On appeal, he argued that testimony that he had threatened to kill his daughter was improperly admitted because it was unduly prejudicial. We concluded that the evidence was not unfairly prejudicial and was admissible to show a continuing course of conduct and the defendant's ill will and identity. *Id.* at 105-06. Other courts have reached similar conclusions regarding 404(b) evidence in arson cases. For example, in *State v. Nicely*, No. 03CA779, 2004 WL 1615928, at *3, ¶ 21 (Ohio Ct. App. 2004), the court determined that five instances of testimony regarding the defendant's alcohol use and possession of a firearm was admissible 404(b) evidence to show his state of mind and was not unfairly prejudicial to the defendant who was charged with arson. In *State v. Gregorio*, 2015 WL 1860802, at *6 (N.J. Super. Ct. App. Div. 2015), the court concluded that earlier incidents of stalking and threats were admissible as 404(b) evidence· to show "a continuous series of events," motive and intent, and were not unfairly prejudicial in a subsequent murder and arson case. Similarly, the probative value of testimony regarding instances of aggressive behavior and threatening text and voice messages was found to be relevant to show the defendant's intent and did not outweigh its prejudicial effect where the defendant was charged with arson and kidnapping in *State v. Jackson*, 132 So.3d 516, 534 (La. Ct. App. 2014). Likewise, here, the·evidence of acts that occurred prior to the fire were relevant to identity and motive, and their probative value was not outweighed by their prejudicial effect. The district court did not abuse its discretion when it admitted evidence of those acts.

[¶33] We reach the same conclusion with respect to the admission of the final category of 404(b) evidence—the incidents that occurred after the fire. All three of those incidents refer to telephone calls made on different days by Mr. Garrison in violation of the protective order (incidents 8, 9, and 10). *See supra* ¶ 7. Undoubtedly these acts are less relevant than those before and leading up to the arson. However, the district court found

that these incidents were relevant for the purpose of illustrating the relationship between the parties. Mr. Garrison cites no caselaw or other authority that would support a contrary conclusion. Further, we do not find that Mr. Garrison has established that this evidence "was extremely inflammatory or introduced for the purpose of inflaming the jury." *Proffit*, 2008 WY 102, ¶ 16, 191 P.3d at 969 (quoting *Law*, 2004 WY 111, ¶ 15, 98 P.3d at 187). The district court reasonably concluded that the evidence was not unfairly prejudicial and, thus, did not abuse its discretion in admitting evidence of Mr. Garrison's telephone calls made to Ms. Hendricks after the fire.

## CONCLUSION

[¶34] Mr. Garrison failed to establish plain error regarding the timing of the district court's *Gleason* analysis. The district court did not abuse its discretion when it admitted evidence of other acts in at trial. We affirm.